# JOHN J. CARLIN

*vs.*

# MARY J. KROUT.

*Negligence—Amusement Device—Duty of Proprietor.*

In an action for injuries received by plaintiff while on an undulating floor, known as the "ocean wave," an amusement device in defendant's park, as a result of her arm being caught between two overlapping hand rails belonging to different sections of the device, *held* that, in view of the lack of evidence that the device was defective or imperfect in design, material, or workmanship, and of the obvious risks attendant on its use, there was no evidence of negligence to go to the jury.     p. 143

That no accident similar to plaintiff's had occurred to any of the thousands of persons who had used the amusement device in question during the two years which had elapsed since its installation, while not conclusive of the absence of negligence, might properly be considered on the question whether any part of the device was improperly designed or constructed.     p. 144

That the regular attendant at the device in question was absent at the time of the accident to plaintiff did not show negligence, it not being his function to assist the individual users of the device, and it not appearing that, if he had been present, and acting with the utmost diligence, he could have prevented the accident.     p. 144

*Decided January 9th, 1923.*

Appeal from the Baltimore City Court (DAWKINS, J.).

Action by Mary A. Krout against John J. Carlin. From a judgment for plaintiff, defendant appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and ADKINS, JJ.

*Edgar Allan Poe* and *Robert D. Bartlett,* with whom were *Bartlett, Poe & Claggett* on the brief, for the appellant.

*James J. Lindsay* and *Sidney R. Traub,* with whom was *James J. Lindsay, Jr.,* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

While passing over an undulating floor, known as the "ocean wave," in a building at the appellant's amusement park, the appellee, a woman fifty-nine years of age, suffered the injury which is the occasion of this suit. The only question presented on appeal from the judgment recovered by the appellee is whether there is legally sufficient evidence of negligence in the construction or operation of the amusement device in the use of which she was injured.

The "ocean wave" is composed of a series of five hinged platforms, having an aggregate length of forty-nine feet, which are given a vertical and longitudinal motion from beneath by crankshafts turned by an electric motor. The platforms are of wood and are evenly joined together by flat metal hinges. Extending upward from the sides of the platforms are solid wooden barriers, about three feet high, surmounted by pipe hand-rails. The side walls of the connecting sections are closely adjusted for the over-lapping movement which occurs when the device is in operation. The handrails are so placed as to be six inches apart, as their ends overlap. There is no lateral motion in any part of the device. At the time of the accident it was in perfect condition and operation according to its design.

The appellee was near the middle of the ocean wave when, as she testified, in moving her left hand from one section of the handrail to another, her arm was caught between the two rails, and when she removed her right hand from the rail on the other side for the purpose of releasing her left arm she fell to the floor, with her arm still held by the rails, and remained in that position for some minutes until an attendant stopped the machinery. The principal injury consisted

of a fracture of the arm bones between the wrist and the
elbow, from which a partial disability of the arm has re-
sulted.

A witness who accompanied the appellee, by walking be-
side the ocean wave as she proceeded over it, confirmed her
account of the accident. It was testified by this witness,
and by another of the appellee's companions, that when she
fell her left arm was resting on top of the rail nearest to
her, but how it was caught and held by the other rail, six
inches away, does not appear from the testimony. An em-
ployee of the appellant testified that he was standing beside
the ocean wave, to the appellee's left, as she was passing
from the second to the third sections, and that a handbag
suspended from her left arm caught on the end of the third
section rail and as she tried to recover it her arm went down
between the rails and she lost her balance, but he jumped over
the side as she started to fall, assisted her to a sitting posi-
tion, her arm having become released, and then hastened to
turn off the power. The witnesses for the appellee stated that
there was no employee of the appellant near the ocean wave
when the accident occurred, and that the handbag carried by
the appellee was suspended from her right arm. While the
handbag fell outside of the rails to the appellee's left, the
explanation made by herself and her witnesses is that it was
carried over to that side when she attempted to assist her left
arm with her right hand.

The question as to the legal sufficiency of the evidence to
support a recovery must be decided upon the assumption that
the circumstances of the accident were correctly described
by the appellee's witnesses. It is, therefore, necessary to
proceed upon the theory that, in some way other than by her
handbag becoming entangled, the appellee's arm was injured
between the rails. But the acceptance of the appellee's state-
ment to that effect does not require us to sustain her charge
that the appellant was negligent in the construction and
operation of the device which she was attempting to use.

No evidence was offered to prove that it was defective or imperfect in design, material, or workmanship. Its structure was simple, and whatever dangers its use involved were obvious. It was manifestly not intended to be regarded as a perfectly safe means of diversion. The special thrill it provided was partly due to the risks which those passing over it would inevitably incur. It was one of a number of unusual forms of amusement which the resort afforded. The admission fee entitled the visitor to use any or all of the various devices or merely to observe their use by other patrons. Above the entrance to the building was a large notice to the effect that persons using the amusements must do so at their own risk.

The charge of negligence in this case does not relate to unseen defects or unexpected dangers, but to visible conditions presenting known hazards which were voluntarily assumed. To support the charge in relation to such conditions, it was not sufficient to show that the appellee's arm was broken on or between the handrails as she fell on the undulating floor over which she was endeavoring to walk, but it was necessary to prove that the appellant had failed to make reasonable provisions to obviate or reduce the risk of such a misfortune. It is urged that an inference of negligence may be drawn from the fact that the ocean wave was so constructed as to permit the recurrent over-lapping of the handrails to the extent of six or eight inches. There is no proof that such an arrangement of the rails was improper or unnecessary. It is evident that handrails were requisite, in order that the danger of falling might be diminished for the patrons, and as the rails must approach and recede with the movement of the sections to which they are attached, it may be that a slight overlapping of the rails, when the connecting sections are depressed to their lowest level, is unavoidable, if the ends of the rails are not to be too widely separated when the sections are raised to their highest elevation. But in so adjusting the hand-rails as to provide an open interval of six inches be-

tween them, when the ends overlap, the appellant was taking a precaution, which he might reasonably regard as sufficient, against such an injury as the appellee sustained. It would be subjecting the appellant to an unduly strict accountability to hold that, in spite of the apparently ample separation of the rails, he should have anticipated the possibility of such an unusual accident as the one described by the testimony. The proof in the case shows that no other accident of this nature has ever occurred to any of the thousands of persons who have used the device during the two years that have elapsed since it was installed. While this fact would not in itself be conclusive as against the theory of negligence, it may properly be considered upon the question as to whether the part of the device which is said to have been improperly designed and constructed is fairly subject to that criticism.

An important consideration in this case is that the appellee, in attempting to use the device in question, could not fail to realize her complete dependence upon her own action for her safety. If, as she testifies, there was no one in charge of the ocean wave at that time, it was all the more apparent that she must rely, for a successful passage, upon her unaided ability to maintain her balance by availing herself of the means of support which were provided. She was aware that it was necessary to move her hands quickly from rail to rail as she passed from one section to another, and she knew the unstable conditions under which this had to be accomplished. It was because of the appellee's failure to properly and safely use the appliances intended for her support, that she received the injury for which she has brought this suit.

The charge of negligent operation is said to be supported by the testimony to the effect that the attendant assigned by the appellant to the ocean wave was absent at the time of the accident to the appellee. It was the duty of the attendant to require those using the amusement to be "constantly moving" and not to "stand and ride up and down in the device," as they had a tendency to do, thus causing it to become

crowded and overloaded. It was evidently not intended or understood to be the function of the attendant to accompany and assist the patrons at every stage of their passage over the moving platforms. Such a service, if practicable, would necessitate the employment of many attendants. But the appellee, according to her testimony, was aware that no assistance of this nature was available, and no causal connection was proved to exist between the attendant's absence and the appellee's mishap. If present, and acting with the utmost diligence, it does not appear that the attendant could have obviated the accident and injury.

In the case of *Fenner* v. *Atlantic Amusement Co.*, 84 N. J. L. 691, the plaintiff was injured while using an amusement device, known as "Human Niagara Falls," on the "Steeplechase Pier" in Atlantic City. As described in the opinion, this device "consisted of an incline upon which was fastened a series of rollers, about eighteen in number. The rollers were about seven feet wide by eighteen inches in diameter. Persons using the device seated themselves upon the topmost roller of the incline, and were then propelled by the force of gravity, over the rollers, to the bottom." The court referred to the "Human Niagara Falls" as one of several devices maintained at the defendant's resort to enable its patrons "to take rides or slides of a more or less thrilling nature." Upon payment of the entrance fee the patrons "if they chose to put themselves in a position of obvious danger," were entitled, said the court, "to the use of all the devices plainly designed to produce unusual excitement and sensations." The injury to the plaintiff was due to the fact that her heel caught between two of the rollers, and as a result she was twisted around and passed head foremost to the bottom of the incline. The declaration alleged negligent construction because of the existence of spaces between the rollers in which the heels of th patrons' shoes might be caught. It was held that the construction of the device was not proved to be negligent, as the rollers were designed to revolve and only the necessary space between was left for that purpose.

In *Pointer* v. *Mountain Ry. Construction Co.*, 269 Mo. 104, the suit was for an injury to a passenger on a scenic railway. The cars used on the railway moved by gravity. They attained high speed in running down steep grades and were subject to sudden swerving movements in passing rapidly around sharp curves. By such a movement the plaintiff's foot was thrown beyond a side opening in the car in which he was riding and struck against uprights beside the track. There was no defect in the car or track, there was nothing unusual in the operation of the car at the time of the accident, and the plaintiff was aware of the conditions under which this form of amusement was available. It was decided that the proof failed to show any negligence of the defendant upon the basis of which the suit could be maintained. A case analagous in its facts to the one just cited, and applying the same principle, is that of *Lumsden* v. *Thompson Scenic Railway Co.*, 130 App. Div. 209.

Upon examination of the cases cited by the appellee we find in each one a sate of facts materially different from those existing in the case now under decision. For example, in *Barrett* v. *Lake Ontario Beach Imp. Co.*, 174 N. Y. 310, the railings around an elevated platform at the upper end of a toboggan slide were not sufficiently close to the floor to prevent a person, who slipped on the platform, from passing beneath them and falling to the ground. In *Stickel* v. *Riverview Sharpshooters Park Co.*, 250 Ill. 452, the plaintiff, a woman, was injured in consequence of being required, against her objection, to slide down a galvanized iron shute as the only means of exit from the amusement resort conducted by the defendant. The accident in *O'Callaghan* v. *Dellwood Park Co.*, 242 Ill. 336, was due to abnormal conditions in the operation of a scenic railway.

It has been held by this Court that the proprietor of a "place of public amusement, to which the public is invited and admission charged, is under an obligation to use ordinary care and diligence to put and keep the place in a reason-

ably safe condition for persons attending in pursuance of such invitation. He is not an insurer of the safety of persons attending, but he is bound to use ordinary care for their safety and protection, and if an injury results from a breach of this duty he is liable." *New Theatre Co.* v. *Hartlove,* 123 Md. 82; *Agricultural & Mechanical Association* v. *Gray,* 118 Md. 606. In the first of the cases just cited the injury complained of resulted from the absence of a necessary guard-rail in a theatre, while in the second case the accident occurred because of the defective condition of a railing at a county fair. In the present case the breach of duty charged against the proprietor does not relate to ordinary conditions which were represented or understood to be safe, but to those existing in an unusual device which was intended to be used only by persons who desired to assume the risks which its use clearly involved. With respect to the construction and operation of such an invention, in the voluntary use of which the appellee was injured, we have been unable to find in the evidence any legally sufficient basis upon which to charge the appellant with actionable liability. It will therefore be necessary to reverse the judgment, and there appears to be no ground upon which a new trial may properly be awarded.

*Judgment reversed, with costs, and without the award of a new trial.*