MYERS *v.* PARK PLAY, INC.

(Decided October 17, 1929.)

*Mr. C. M. Shetler*, for plaintiff in error.
*Messrs. Lynch, Day, Fimple, Pontius & Lynch*, for defendant in error.

LEMERT, J. This cause was tried in the common pleas court of Stark county. At the conclusion of all the plaintiff's testimony, the trial judge sustained the defendant's motion for a directed verdict, and the cause is now before this court on error from such ruling of the trial court.

The parties in this court appear in the same order as they did in the court below, and will be so referred to herein.

The evidence showed, in fact it was admitted in the answer, that the defendant was the owner and operator of a certain amusement concession located at Meyers Lake Park west of the city of Canton, Ohio, and known as a Dashing Dodgem. The device is one of a number at said amusement park, and its operation was described in the evidence about as follows: A small number of cars, each accommodating not more than two passengers, operated under the control of the passengers over a metal

floor, a steering wheel in each car enabling the occupants to control the direction which the car takes on the floor. Behind the seat in each car is an electric motor which furnishes the motive power for the car. A foot pedal in the floor of each car serves as a switch, by means of which the operator of each car is able to control the flow of current through the motor. The motors are supplied with current by means of a trolley pole located behind the seat in each car, extending up to and making contact with an overhead trolley by means of a double loop of heavy wire at the end thereof, which functions as a swivel when the car moves about on the floor in the way that the operator may direct. The so-called trolley is constructed of wire netting and extends above the entire floor on which the cars move. The evidence shows that this trolley is four or five feet above the heads of the occupants of the cars. A ground connection from each car makes contact with the metal floor and completes the circuit, which runs from the overhead trolley down the trolley pole through the floor pedal switch. After the occupants in the car are seated the current is turned on by an attendant, and the operation of each individual car is as hereinbefore detailed. The evidence shows that it was part of the sport for the occupants of the various cars to drive the cars into each other, and the evidence shows that this plaintiff was engaged in this phase of the sport along with the occupants of the other cars on the floor. The floor on which the cars operate is located in a building of open construction, the walls of which extend about three or four feet from the foundation, so that every patron of the device had full oppor-

tunity to see the details of operation before commencing the ride.

The record shows that the plaintiff paid the regular price of the ride, and, after waiting his turn for a short time, took his seat in one of the cars and participated in the entire ride, and he states that, while he was so riding, he felt a burning sensation in his eye, and claims that he got a spark in his eye during the course of the ride, upon which claim his cause of action against the defendant company is founded, so that we have before us for consideration and decision the question whether or not a person who contracts for a pleasure ride upon an amusement device such as hereinbefore described, the whole device being open to view, must as a matter of law subject himself to the inconveniences and occurrences incident to the usual operation of such device.

In every action in which a plaintiff seeks to recover for damages which are the result of personal injuries sustained as a result of claimed negligence on the part of a defendant, it is important to determine just what the situation of the parties was at the time of the alleged injury. We note that it is clear in this case that the plaintiff was riding upon an amusement device. It seems to us that it is a fair inference that the plaintiff must have been suspecting something unusual when he started to ride on this concession. So the question immediately presents itself as to whether or not, when the party who claims to have been injured undertook to ride on this device, he assumed the risks incident to the usual operation in connection with this ride.

We note the following testimony from the transcript:

"Q. When you got your ticket and were waiting in line there, were cars on the floor in motion? A. Yes.

"Q. Did you see any sparks falling down then? A. Why I suppose there was—I didn't pay any particular attention to that.

"Q. Do you know whether there was or not? A. I am not positive but I would say that there was.

"Q. You observed that before you went in and got on this dodgem car, didn't you? A. Yes.

"Q. You observed sparks falling from trolleys, did you? A. Yes.

"Q. You continued to drive around after that, did you? A. I had to. I couldn't get out.

"Q. In other words before you got in one of these cars you saw sparks falling and after you got into the car and got in motion and before you received this claimed injury you saw sparks falling? A. Yes. I saw the sparks falling, more than likely, when I was outside, but I never paid any attention to it because there was a crowd and we were all talking. When we got inside and saw them I thought more about it."

The testimony in the case at bar shows that the persons riding upon this device, as part of the sport, were accustomed to drive their cars into the cars of other patrons of the device, and the plaintiff admits that he bumped the car into the other cars on the floor, and that the practice was general at the time he was on the ride. We note that, instead of proving the allegations of negligence as set forth in the petition, the testimony offered by plaintiff's expert,

by the plaintiff himself, and other witnesses, shows that what the plaintiff really claimed was a source of danger were the sparks flying from the trolley pole and the overhead trolley wires, and also that the same were apparent to him and any other person before getting on the device.

We believe that *Pointer* v. *Mountain Ry. Construction Co.*, 269 Mo., 104, 189 S. W., 805, 812, L. R. A., 1917B, 1091, is decisive of this case, wherein it is held that a passenger who contracts for a pleasure ride on a scenic railway, whose cars by gravity run rapidly down declines, and by momentum up inclines, on tracks making short curves, the whole device being open to view, must subject himself to the inconveniences, jerks, and even dangers incident to the mode of travel, and that, if the only facts shown as having caused the accident are a slacking of the speed of the car as it reached an incline, and a sudden acceleration of speed as it dipped down a decline, and a wiggling of the car from side to side as it rounded curves, and they are not shown to be unusual occurrences, he cannot recover for his injury. In that case the court so held, and used the following language: "Plaintiff knew he was contracting for carriage upon a pleasure device, which device with its tracks of dips and curves was before him, as a circular swing stands before one contracting to ride upon it. He knew he was making no contract for a Pullman car upon the level tracks of a steam railroad. When he contracted for this peculiar carriage, it was written in such contract, by the law, that he must subject himself to the inconveniences, jerks, and even dangers usually incident to that mode of conveyance."

The case at bar differs entirely from numerous cases wherein the relationship between the operator of an amusement device and a patron thereof is not that of carrier and passenger.

In *Carlin* v. *Krout,* 142 Md., 140, 120 A., 232, 29 A. L. R., 13, where the plaintiff, a woman 59 years old, was injured while using an amusement device operated by defendant known as an Ocean Wave, and consisting of a platform made to undulate by machinery while the patrons were walking over it— plaintiff getting her arm between two overlapping guard rails and falling to the floor, breaking the arm —it was held that the dangers of using the device were obviously assumed by the plaintiff, and that the evidence was insufficient to show any actionable liability in the construction or operation thereof.

In *Godfrey* v. *Connecticut Co.,* 98 Conn., 63, 118 A., 446, the court held that, in the case of a device not inherently dangerous, either in its construction or in its operation, the operator of such amusement device was not an insurer of the safety of patrons, but was required merely to use reasonable care to make and keep the premises and the apparatus reasonably safe for patrons.

From a careful examination of the record in this case it is found that it was apparent that the claimed dangers could readily be seen by the plaintiff before he commenced to ride on the device.

Under the rules laid down, and numerous authorities, if this be true, the plaintiff assumed the risk of whatever occurred.

We note from the record that at the time of the accident complained of, for which plaintiff brings suit, nothing unusual happened; nor at the time he

was riding on the concession, as hereinbefore explained. So far as appears from the evidence, the device was operating just the same that night as it was operating before and has been operating since. The presence of sparks, according to plaintiff's own expert, was bound to occur. It was a usual happening because of the nature of the device. The manner in which the patrons bumped the cars would also tend to cause sparks of the kind complained of.

So all of these things being apparent before the plaintiff undertook to ride in the device in question, we find and hold that, under the well-settled rules of law, he assumed the risks incident to the usual operation of the device.

Some other matters are presented to the court in this case, both in brief and oral argument, but we deem it unnecessary to comment and pass upon the same, for the reason that we find and hold that upon the doctrine of assumed risks in this case the trial court was fully justified in sustaining a motion to direct a verdict.

Therefore the judgment of the court below will be affirmed.

*Judgment affirmed.*

HOUCK and SHERICK, JJ., concur.