

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

Honorable Clark C. Wren, Executive Secretary
Texas National Guard Armory Board
Room 1603 - Second National Bank Building
Houston (Zone 2), Texas

Dear Sir:

Opinion No. O-5505
Re: Whether Senate Bill No. 266
applies to rental agreements
and leases executed by the
Texas National Guard Armory
Board, and related questions.

This will acknowledge receipt of your letter of recent date wherein you requested the opinion of this department upon matters therein stated. We quote the body of your letter in full as follows:

"I am directed by the Texas National Guard Armory Board to ask for your opinion with respect to the questions herein presented and to say that the matters involved must be decided quickly if the Board is to make the necessary lease and rental contracts. In connection with the questions I submit pertinent facts and remarks.

"Bearing on the questions are the following Statutes:

"Chapter 1. Title 'Militia' p. 486, G.L. 46 Leg. Art. 5790.

"Authorizing the Adjutant General to execute in behalf of the State as Lessee, leases and subleases with Texas National Guard Armory Board and to renew such leases and sub-leases from time to time.

"Chapter 2. supra. pp 487 et seq. (The Armory Board Act)

"Creating the Armory Board as a body politic and corporate and providing that it shall 'have charge of the acquisition, construction, rental, control, maintenance and operation of all Texas National Guard Armories' etc; 'possess all powers necessary and convenient for the accomplishment of such duty' etc. (Sec 2); 'enter into contracts in connection with any matter within the objects, purposes or duties of the Board' (Sec. 2b); 'acquire, by gift or purchase, property of any and every description, real, personal or mixed including leasehold estates (Sec 2f); lease and sublease its property and pledge the revenues thereof (Sec 2g); borrow money and issue bonds and other evidences of indebtedness secured by a pledge of the revenues of its property etc. (Sec 2h); execute and deliver leases or sub-leases demising and leasing to the State of Texas; determine the term of such leases; and providing that the law requiring notice and competitive bids shall not apply to leasing or sub-leasing of such property. Also it is provided that the Board shall determine the installments of rental to be paid by the State and, manifestly, there is left to the Board the right and duty of determining the amount of rental to be paid by the State within the yardstick set out in the Statute (Sec. 21). Section 3 stipulates that, when any of the property owned by the Board shall be fully paid for, the property is to be conveyed by the Board to the State.

"S. B. No. 266 of the 48th Legislature, approved May 7, 1943 directing all agencies of the State to submit requests for rental spaces to the State Board of Control etc. and purporting to empower the Board of Control to determine whether or not such space is needed. It should be noted that this Act does not provide as to what is to happen if its provisions are not complied with nor deny that payments be made on rental contracts made without compliance with the Act.

"S. B. No. 329 of the 48th Legislature approved May 8, 1943 authorizing the Armory Board and the Adjutant General to dispose of property that National Guard Units left behind when they entered Federal Service and appropriating money for the purpose.

"The Departmental Appropriation Act of the 48th Legislature S. B. No. 332. (Item 4, Supp. to House Journal, p. 234)

"The facts out of which the questions presented grow are stated below under consecutive numbers in connection with the questions propounded.

"1. Acting under authority of the then existing law the Armory Board has acquired a valuable property in Harris County consisting of land, runways and buildings worth in the neighborhood of Two Hundred Thousand Dollars on which it owes some Thirty-odd thousand Dollars which the Board is paying off out of rentals received under a lease - Armory Board, lessor, to State of Texas, lessee - which lease expires August 31, 1943 and is to be renewed for the two year (biennium) period beginning September 1, 1943. This property manifestly falls under the provisions of the Armory Board Act (supra) which, in Section 2 (1), provides that statutory provisions requiring notice and bids shall not apply.

"Thus occurs Question #1. (a) Does S. B. 266 (supra) operate so as to require that request be made by the Armory Board to the Board of Control under that Bill with respect to the property mentioned in the above stated facts, which property is generally known as '36th Division Aviation Armory and Airport'? (b) Absent any such request and any action by the Board of Control and the Attorney General under S. B. 266, are the Armory Board as Lessor and the State of Texas, acting by the hand of the Adjutant General, as lessee, legally competent to proceed to execute

a lease covering such property for the two year
period beginning September 1, 1943? and (c)
Will the Comptroller and the State Treasurer be
authorized to issue warrants covering the rental
provided for in such lease, the rentals being
fixed by the Armory Board within the yardstick
set out in Section 2 (i) of the Armory Board Act.

"2. Acting under S. B. 329 of the 48th Leg-
islature the Armory Board and the Adjutant General
are now engaged in the work and, prior to August
31, 1943, will have completed disposition of Na-
tional Guard property and cancellation of all rent-
al arrangements under which such property has been
stored in fifty-odd places throughout the State
so that no such storage space will be needed after
the last mentioned date, except as to cavalry units
later mentioned. The work cannot, however, be com-
pleted prior to said date and this results in the
necessity of continuing to utilize the storage
space contracted for by the Board at the beginning
of the current biennium, in a few places, until
some date in August, 1943. The existing arrange-
ments require 30 days notice for cancellation,
otherwise they run to the end of the current bi-
ennium. Thus it is true that, prior to the ef-
fective date of S. B. 266, the Armory Board was
committed to the existing storage arrangements
that will not terminate until August 31st next.

"Thus occurs Question #2. How do the provi-
sions of S. B. 266 affect these arrangements? See
your recent opinion No. 5427.

"3. At Fort Worth and Houston the Armory
Board has outstanding arrangements with the Fort
Worth Cavalry Club (Troops A and B, 124th Cavalry,
Texas National Guard) and the Houston Cavalry Club
(Headquarters Troop and Medical Detachment, Texas
National Guard) under which, subject to State appro-
priations being available for the purpose, the Ar-
mory Board is to pay rentals for the armories of

Honorable Clark C. Wren, Executive Secretary, Page 5

such units to the Clubs ($100.00 monthly to the Port Worth Club and $25.00 monthly to the Houston Club) and the Clubs are to apply this rental to paying off an indebtedness on the land and buildings involved with the understanding that, when such indebtedness is fully paid, the property will be conveyed to the Armory Board free of debt. The Armory Board does not propose to move the property of such cavalry units from its present place of storage but proposes to continue to pay to such Clubs for such storage the rates above stated during the coming biennium.

"The property left behind by these cavalry units is, for the most part, built into the buildings so as to be a fixture and to move it would result in great damage. Any procedure under S. B. 266 would result in loss instead of gain to the State and all concerned. If S. B. 266 is to disturb this situation, it would seem the better economy to abandon the stored property and the equity that the Clubs have in their properties. In this connection it is suggested that, if S. B. 266 is to be applied, the Armory Board could do no less than request the Board of Control to ask for bids on the space that is now under contract to the Board because no other space could be used. The two Clubs would then be the only bidders and nothing would have been accomplished except the money spent for advertisements.

"Thus occurs Question #3. Is the Armory Board warranted in continuing the present arrangement with these Clubs and the payment of such rentals without action by the Board of Control and the Attorney General under S. B. 266?

"4. The Armory Board, as it was authorized to do under its Act (last part of Section 1), determined that its Headquarters should be in a suite comprising a board room, its Executive Secretary's office, its Assistant Secretary's office and its stenographer's office (4 rooms), known as 1603 Second National Bank Building, Houston, Texas. The rental contracted for and paid for a time was $133.00 per

month plus the cost of lights. Some weeks ago, because it had not employed an Assistant Secretary, the Armory Board arranged with the building management to reduce its rent for the office to $100.00 per month, lights furnished by the building, and the Armory Board gave up one of its rooms. This arrangement contemplated that, if the Armory Board was authorized so to do, it would keep its reduced office space and pay $100.00 per month rental therefor for at least a year after September 1, 1943. The Board after moving to these Headquarters spent considerable money for stationery now on hand showing its address to be 1603 Second National Bank Building, Houston, Texas. If it should have to move as a result of action under S. B. 266 the stationery would have to be discarded. The Board believes its rental arrangement is reasonable and, if it has authority to do so, will continue it. Any action by the Board of Control in the premises under S. B. 266 would be in direct conflict with the provisions of the Board's Act which authorizes the Armory Board, not the Board of Control, to determine its place of Headquarters. In this connection it is pointed out that neither in the caption of S. B. 266 nor in the body of the Act, does the Act purport to amend the Board's Act. (See State Constitution Art. III, Sections 35 and 36). It is believed that if the Legislature had intended that S. B. 266 was to amend the Board's Act, the Legislature would have said so and because it did not, the assumption should be that the Legislative intent was to leave the Armory Board's powers as stated in the Board's Act.

"Thus occurs Question #4. Does S. B. 266 operate so as to require that the Armory Board request of the Board of Control action under the Act toward securing the necessary space for the Armory Board's place of headquarters? In connection with this question the Armory Board

states that in any request that it might make
on the Board of Control in the premises, it
would ask for the space it is now occupying.

"A copy of this request for your opinion
is being sent to the Comptroller, the State
Treasurer, the Board of Control and the Ad-
jutant General for their information, and it
is requested that you furnish them with copies
of your reply."

It is apparent that all of your inquiries hinge
upon the primary question of whether the provisions of
Senate Bill No. 266 (Chap. 258, Acts 1943, 48th Leg.) apply
to the Texas National Guard Armory Board; that is, whether
the Texas National Guard Armory Board is a state agency or
department within the contemplation of the Act.

Without quoting at length from Senate Bill No. 266,
we will simply state that it requires all state departments
and agencies to secure the rental space they need by submit-
ting their requirements to the Board of Control, which will
then determine if money is available to pay rentals for such
space and whether the space is needed. Having reached an
affirmative conclusion in each instance, the Board of Con-
trol is required to advertise for bids and accept the lowest
and best bid submitted.

In our opinion No. 0-5427, which quotes at length
from the provisions of Senate Bill No. 266, we stated:

"Any new lease or rental contract entered
into after passage of Senate Bill No. 266 must
be executed in the manner prescribed by Sections
1 and 2 of the Act. The Legislature having pro-
vided a mode for the securing of rental space,
the agencies and departments affected are re-
stricted to that mode and must conform to these
requirements."

The Texas National Guard Armory Board was original-
ly created by the 44th Legislature, Acts 1935, General Laws,

Honorable Clark C. Wren, Executive Secretary, Page 8

Chap. 184, page 462, which was amended by the 45th Legislature, Acts 1937, Reg. Sess., Chap. 366, and later again amended by the 46th Legislature, Acts 1939, page 487. This legislation, as amended, has been codified as Article 5890b, Vernon's Annotated Civil Statutes.

You have correctly stated in your letter that the Texas National Guard Armory Board, which will be hereinafter referred to simply as the Armory Board, was created and constituted a body politic and a corporation. See Article 5890b, Sec. 1. The duties and functions of the Armory Board are set out in Sections 2, 3 and 4 of Article 5890b. Section 2 of that Article reads in part as follows:

"It shall be the duty of said Board to have charge of the acquisition, construction, rental, control, maintenance and operation of all Texas National Guard Armories, including stables, garages, rifle ranges, hangers and all other property and equipment necessary or useful in connection therewith, and the said Board shall possess all powers necessary and convenient for the accomplishment of such duty, including, but without being limited thereto, the following express powers:" (Emphasis added)

Among the express powers conferred upon the Board under this section are the following:

"(f) To acquire, by gift or by purchase, for use as building sites or for any other purposes deemed by said Board to be necessary or desirable in connection with or for use or units of the Texas National Guard, property of any and every description, whether real, personal or mixed, including, but without limitation on the foregoing, leasehold estates in real property, and hold, maintain, sub-lease, convey and exchange such property, in whole or in part, and/or to pledge the rents, issues and profits thereof in whole or in part ; . . . ."

Honorable Clark C. Wren, Executive Secretary, Page 9


As pointed out in Texas National Guard Armory Board v. McCraw, 132 Tex. 613, 126 S.W. (2d) 627, 632, by Justice Sharp, who wrote the opinion:

"The clear purpose of this Act is to give stability to the military arm of the State. It provides that the persons acting as members of the existing Texas National Guard Armory Board shall compose the members of the Board under this Act. This Act provides that those who constitute this Board shall be the three ranking members of the Texas National Guard, which insures experienced men on the Board to guide and direct the affairs of the Texas National Guard. The members of the Board serve without pay, and it is to them a duty of trust and honor. The dominant object of this part of the Act is to have continuity of service on the Board of men of military training, and who have been selected for their experience and merit, in order that the efficiency of the Board may not be impaired."

Since the above case was decided two additional members have been added to the Armory Board by the 46th Legislature. The two additional members are the senior active officer of the National Guard of Texas and the senior cavalry officer of said Guard. See Acts 1939, 46th Leg., p. 487, Sec. 1. It is thus apparent that the Legislature has sought to staff the Armory Board with the outstanding military men of the State.

The powers and authorities which we have quoted from the statute are but a small portion of the many express powers conferred upon the Armory Board by Article 5890b. These are the powers and authorities with which we are primarily concerned here, but we shall have occasion at a later point in this opinion to refer to other powers possessed by it.

The vital function of the Armory Board, and the obvious purpose of the Legislature in creating it, is to provide a means of securing armories to house the State militia and its equipment. In this connection we direct your attention to other language in the case of Texas National Guard

Honorable Clark C. Wren, Executive Secretary, Page 10

Armory Board v. McCraw, supra, which appears at page 681 in the Southwestern Reporter cited, and which reads as follows:

> "It would be difficult for the mind to conceive how an army can be raised, equipped, and disciplined, as commanded by Section 46 of Article 16 of the (Texas) Constitution, without armories to house the army and its equipment. The power to provide for the army is left to the wisdom of the Legislature, subject only to the limitation that such laws as shall be passed by the Legislature, shall not be 'incompatible with the Constitution and Laws of the United States.' The Legislature has seen fit to enact this law for the purpose of procuring sites and erecting armories, and has furnished the method for financing the plan. The wisdom or the expediency of the law is left exclusively to the Legislature to determine, and courts are concerned only with its validity."

Article 5890b, to us, evidences the considered purpose of the Texas Legislature to place absolute and unlimited discretion for the accomplishment of the objects therein enumerated in a board composed of men with military background. The powers which have there been conferred upon the Armory Board by the Legislature are, in every instance, expressed in the broadest possible terms, thus further revealing the unmistakable intent of the Legislature that the entire discretion in matters concerned with securing armories to house State military establishments rest in the Armory Board. Throughout this article, the Legislature has with scrupulous care stated that nothing expressed therein is to be construed as a limitation upon the power and authority which the Armory Board may need for the accomplishment of its purposes. A delegation of authority more sweeping in its scope, to the end that stability be given to the military arm of the State, cannot be imagined.

Mindful of the purpose for which the Armory Board was created and of the plenary powers for accomplishing this

purpose which have been conferred upon it, and mindful of the military character of the Armory Board and of its undertaking, we do not believe that the Legislature would vest any portion of that authority in another board without using language clearly expressing that intention. Nor do we believe that the 48th Legislature by enacting Senate Bill No. 266 (Chapter 289, Acts 1943, page 385) intended to take from the Armory Board any of the broad powers and discretion which had been theretofore conferred upon it.

Article 7890b places in the Armory Board the express duty to acquire leasehold estates and grants to it "all powers necessary and convenient for the accomplishment of such duty." If we hold that Senate Bill No. 266 applies to the Armory Board, we must necessarily hold that the Legislature intended to take from the Armory Board these broad powers and discretions.

In Senate Bill No. 266, the 48th Legislature has placed absolute discretion over the need by any agency or department of the rental space which it proposes to lease or rent in the Board of Control. Some possible distinction may be made on the basis that Senate Bill No. 266 refers to and applies to rental space, while Article 7890b applies to leasehold estates. However, we will not quarrel with mere terminology. As we have seen, Article 5890b places absolute discretion in the Armory Board over the necessity or desirability of such leasehold estate as it desires to acquire. Likewise under Article 5890b selection of sites is left to the discretion of the Armory Board as a necessary corollary of the grant of "all powers necessary and convenient to the accomplishment" of its duties. Under Senate Bill No. 266, selection would be made to depend, in part at least, upon the amount bid and other factors which may or may not take into consideration the desirability of the site as a military installation.

Again quoting from the opinion of Justice Sharp in Texas National Armory Board v. McCraw, supra:

"It is well to keep in mind that we are dealing with statutes and provisions of the Constitution relating to military matters and

the power of the State to create an army and
provide for its maintenance . . . . This Act
is a part of the program adopted by the Legis-
lature of Texas relating to the organization
and maintenance of the Texas National Guard."

We do not believe that in passing Senate Bill No.
266, the 48th Legislature intended to encroach upon the
broad discretion which it has placed in the military arm
of the State and entrust those matters to men without mili-
tary background. As we have seen, the Legislature in Article
7890b has been careful to prescribe that only men with mili-
tary background serve on the Armory Board. The primary
function of the Armory Board is to secure and maintain ar-
mories and the Armory Board Act places the burden upon the
Armory Board to do whatever is necessary to carry out its
objects and purposes.

While Senate Bill No. 266, according to its ex-
press language, applies to all State agencies, we are of the
opinion that properly construed, it does not apply, and was
not intended by the Legislature to apply, to governmental
corporations, such as the Armory Board, to which the Legis-
lature has granted broad and extensive powers for the accom-
plishment of a particular and segregated purpose of the State.
We have already alluded to the fact that the Armory Board,
as set up by the Legislature, is constituted a body politic
and a corporation, which, while it performs functions bene-
ficial to the State, is not in a true sense a component and
interdependent part of the administrative machinery of the
State government.

In its broadest connotation, the expression "state
agency" may and does encompass all organizations and bodies
serving any of the objects or purposes of the State govern-
ment. Under this definition all organizations which are
created by the State to carry out any one of the many State
purposes, as distinguished from those which serve strictly
private enterprises, are classed as state agencies. In Re
Lindsey-Strathmore Irr. Dist., D. C. Cal., 21 F. Supp. 129.
Thus a school district, a port commission, a city board of
elections, an irrigation district and a bridge district

Honorable Clark C. Wren, Executive Secretary, Page 13

have all been held to be state agencies.  See 40 Words &
Phrases (Perm. Ed.) 19.

And under this broad definition, even incor-
porated cities have been called State agencies by the
courts of Texas.  As pointed out in Texas National Guard
Armory Board v. McCraw, supra:

"In its governmental capacity a city is
a political subdivision of the State, and in
many instances is considered as an agent of
the State; and the State may use such agent in
the discharge of its duties.  Yett v. Cook,
115 Tex. 205, 281 S.W. 837; City of Uvalde v.
Uvalde Elec. & Ice Co., Tex. Comm. App., 250
S.W. 40; City of Trenton v. New Jersey, 262
U.S. 182, 43 S. Ct. 534, 67 L. Ed. 937, 29
A.L.R. 1471; 43 C.J., Sec. 5, p. 79, and sec.
179, p. 182 and cases cited in footnotes; Cor-
poration of San Felipe De Austin v. State, 111
Tex. 108, 229 S.W. 845; City of Aransas Pass v.
Keeling, 112 Tex. 339, 247 S.W. 818; 43 C.J.,
sec. 5, p. 70."

We doubt that anyone would seriously contend
that a city is a State department or that anyone would
seriously urge that the provisions of Senate Bill No.
266 are intended to apply to cities.  While cities are,
in the broad sense, arms of the State, they are neverthe-
less sovereign in themselves within the limitations im-
posed by the Constitution and statutes of the State.
They are not like those agencies or departments of the
state government which perform limited functions as a cog
in the administrative machinery of state government and
which have no sovereignty of their own.

Yet, if we were seeking an analogy, we would
certainly conclude that the Armory Board is more nearly
like a municipal corporation or city than a State depart-
ment.  To all intents and purposes, the Armory Board is a
governmental corporation, with powers and authorities com-
mensurate with those possessed by private corporations or

Ionorable Clark C. Wren, Executive Secretary, Page 14

municipal corporations. It has been created by the Legislature to serve certain, limited interests of the State, namely, the acquisition of armories for the State's armed forces.

Article 5890b gives the Armory Board almost unlimited powers to effectuate and accomplish its purposes. Section 4 of that article provides that: "In the execution and administration of objects and purposes herein set forth, the (Armory) Board shall have power to adopt means and methods reasonably calculated to accomplish such objects and purposes and this Act shall be construed liberally in order to effectuate such objects and purposes."

Under this statute, it possesses numerous powers which are not ordinarily, and, in fact, most of which are never, granted to ordinary state departments. For example, to name a few of the powers granted, the Armory Board has authority to sue or be sued in its own name and to enter into contracts in its own name; to have and use a corporate seal; to fix the number of and compensation of its employees; to adopt, change and amend by-laws, rules and regulations for the conduct of its affairs; to construct buildings and to buy, own, sell or exchange property in its own name; to borrow money and issue and sell bonds for the purpose of acquiring building sites and buildings and to contract with the State as a separate entity.

For all of the reasons stated, we have concluded that Senate Bill No. 266 does not apply to the Texas National Guard Armory Board and you are so respectfully advised.

What we have stated answers all of the questions propounded by you with the exception of your questions 1(b) and 1(c), which we will now consider.

In the negotiation of all leases and subleases between the Texas National Guard Armory Board and the State of Texas the Adjutant General, under the provisions of subsection (i) of Section 2 of Article 5890b, is authorized and designated to act for the State. We quote this subsection in full, as follows:

533

"To execute and deliver leases, or sub-leases in the case of buildings located upon leasehold estates acquired by the Board, demising and leasing to the State of Texas through the Adjutant General, who shall execute the same for said State, for such lawful term as may be determined by the Board, any building or buildings and the equipment therein and the site or sites therefor, to be used for Armory and other purposes and to renew such leases or sub-leases from time to time; provided, however, that if at any time the State of Texas shall fail or refuse to pay the rental reserved in any such lease or sub-lease, or shall fail or refuse to lease or sub-lease any such building and site, or to renew any existing lease or sub-lease thereon at the rental provided to be paid, then the Board shall have the power to lease or sub-lease such building and equipment and the site therefor to any person or entity and upon such terms as the Board may determine. <u>The law requiring notice and competitive bids shall not apply to leasing or sub-leasing of such property.</u> The annual rental (which may be made payable in such installments as the Board shall determine) to be charged the State of Texas for the use of such property leased or sub-leased to it by the Board shall be sufficient to provide for the operation and maintenance of the property so leased or sub-leased, to pay the interest on the bonds, debentures or other evidences of indebtedness, if any, issued for the purpose of acquiring, constructing or equipping such property, to provide for the retirement of such bonds, debentures or other evidences of indebtedness, if any, and the payment of the expenses incident to the issuance thereof, as well as the necessary and proper expenses of the Board not otherwise provided for." (Emphasis added)

Honorable Clark C. Wren, Executive Secretary, Page 16

It will be observed that this subsection specifically states (see underlined sentence above) that the "law requiring notice and competitive bids shall not apply" to leases or sub-leases between the Texas National Guard Armory Board and the State of Texas.

Senate Bill No. 266 on the other hand provides that leases to all departments and agencies of the State shall be made on competitive bids by the Board of Control. No provision was made in this bill, however, for either specific or general repeal of conflicting legislation. If the underlined provision of subsection (1) has been repealed by Senate Bill No. 266, such repeal must have been accomplished by implication since no actual repeal, either specific or general, is contained in the Bill as passed by the Legislature. Such repeals are not favored by the courts and will not be invoked unless the old and the new law are so antagonistic and repugnant that both cannot stand, the presumption being that the Legislature in enacting the new law intended for the old provision to remain in effect, 39 Tex. Jur. 140, and cases cited in the footnotes.

> "If by any reasonable construction two acts or statutory provisions can be reconciled and so construed that both may stand, one will not be held to repeal the other. Especially where the older law is particular and is expressed in negative terms, and the later statute is general, a construction will be sought which harmonizes them and leaves both in concurrent operation." 39 Tex. Jur. 141-2, and cases cited in the footnotes. (Emphasis added)

The underlined provision in subsection (1) of Section 2 of Article 5890b is expressed in negative terms. It applies to a particular type of lease--those for armories--and it is restricted to leases between the Armory Board and the Adjutant General, acting as agent for the State.

The new law--Senate Bill No. 266--is general. It applies to all leases by all departments and agencies of the State.

Honorable Clark C. Wren, Executive Secretary, Page 17

Therefore, applying the quoted rule of statutory construction, both provisions should be allowed to stand. Subsection (1) of Section 2 of Article 5890b will be considered an exception to the general provisions contained in Senate Bill No. 266. 39 Tex. Jur. 149-50; Townsend v. Terrell, 118 Tex. 463, 16 S.W. (2d) 1063; Cole v. State, 106 Tex. 472, 170 S.W. 1036, dismissing error 163 S.W. 353; Ellis v. Batts, 26 Tex. 703.

Your inquiries are therefore respectfully answered as follows: 1.(a) No. (b) Yes. (c) Yes. 2. Senate Bill No. 266 has no affect on the arrangements you outline. 3. Yes. 4. No.

Trusting that we have fully answered your inquiry and that you will call upon us if we can be of further service, we are

APPROVED SEP 3, 1943

ATTORNEY GENERAL OF TEXAS

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____

Peter Maniscalco
Assistant

PM:ff

