## SANDERSON ET AL. V. FRAZIER.

1. The law governing the liability of stage-coach proprietors as com-
mon carriers of passengers imposes upon such carriers the duty of
providing roadworthy vehicles suitable for the transportation of
passengers, steady and manageable horses, with strong and proper
harness, and careful drivers, of reasonable skill and good habits.
2. It is the duty of passengers to comply with the reasonable regula-
tions of the carrier, and to exercise proper care and diligence in
avoiding injury to themselves, for the rule that one cannot recover
for an injury which has been caused by his own negligence is ap-
plicable to this class of passengers.
3. Where a passenger in a stage-coach, with two other passengers on
the seat with him, had his arm projecting outside the body of the
coach, so that when the coach was overturned the other passengers
in the seat were thrown down upon him, and his arm caught under
some portion of the vehicle and broken, *held*, that the passenger
so injured was not guilty of contributory negligence.
4. Where any damage or injury happens to a passenger by the over-
turning of a coach, a *prima facie* case is made out by proof that
the relation of carrier and passenger existed between the parties;
that an accident occurred resulting in injury to the passenger,
and that it was occasioned by the failure of some portion of the
appliances or means provided for the transportation of the passen-
ger.
5. The want of skill of the driver may be shown at the time of the ac-
cident, or at any prior time; but his good or bad conduct can only
be looked at, at the time the accident occurred, or as connected with
the accident.
6. The judgment of the jury must govern as to what is a proper and
just compensation in an action for personal injury by the overturn-
ing of a coach, unless the damages awarded are so obviously dis-

proportionate to the injury shown to be sustained as to warrant the belief that the jury must have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case.

*Error to District Court of Arapahoe County.*

THE facts are stated in the opinion.

Mr. HUGH BUTLER, for plaintiff in error.

Messrs. WELLS, SMITH and MACON, for defendant in error.

STONE, J. The law governing the liability of stage-coach proprietors as common carriers of passengers is quite well settled by juridical decisions of the highest courts.

The law imposes upon such carriers the duty of providing roadworthy vehicles suitable for the transportation of passengers, steady and manageable horses, with strong and proper harness, and careful drivers of reasonable skill and good habits. Although their undertaking is not one absolutely to convey safely — that is to say, while they do not warrant the safety of passengers at all events, yet their undertaking and liability go to this extent, that their means of transportation are suitable and sufficient, that they and their agents possess competent skill, and that they will use all due care and diligence in the performance of their duty.

Respecting the measure of this care and diligence, considering that such carriage is charged with the lives, limbs and health of human beings, it has been held that passenger carriers bind themselves to carry safely those whom they take into their coaches, " as far as human care and foresight will go — that is, for the utmost care and diligence of very cautious persons." Some cases even hold that such carriers are responsible " for any, even the slightest, neglect." This doctrine is laid down by the su-

preme court of the United States, in the case of *Stokes v. Saltonstall*, 13 Pet. 190, which is regarded by the authorities as the leading case on this subject in the United States, and the same doctrine is stated as the law by Mr. Story in the text of his work on Bailments, sec. 601. In support of the same rule as to liability in such cases are the following authorities: *Farish & Co. v. Reigle*, 11 Gratt. 697; *McLean v. Burbank*, 11 Minn. 277; *Maury v. Talmadge*, 2 McLean, 157; *Peck and wife v. Neil*, 3 McLean, 23.

On the other hand, it is the duty of passengers to comply with the reasonable regulations of the carrier, and to exercise proper care and diligence in avoiding injury to themselves, for the rule that one cannot recover for an injury which has been caused by his own negligence, or where by his own fault he has so far contributed thereto that but for such fault on his part the injury would not have happened, is applicable to this class of passengers.

The appellee Frazier was a passenger in one of the stage-coaches of appellants, running at that time between Cañon City and Leadville, and by the upsetting of the vehicle his arm was broken, and the alleged negligence of the driver in causing the upset is the ground of action for the resultant injury. A question of contributory negligence on the part of the appellee was made by the pleadings in the court below, and one of the alleged errors relied upon by appellants in seeking to reverse the judgment is, that the verdict is contrary to the evidence and the law in respect to such alleged contributory negligence.

The act of appellee constituting the negligence complained of was in having his arm, at the time of the accident, "outside the coach."

The upset was caused by the wheel on one side of the vehicle striking on a rock at one side of the road, whereby the stage was thrown over upon the opposite side. This portion of the road was in a cañon in a mountainous part

of the journey. It was in the night; there was no light on that side of the stage which struck the rock. But the driver testified that it was not so dark but that he was able to see the rock just before striking it. The appellee was sitting on the end of the seat on the opposite side; there were two other passengers in the same seat which crowded appellee close to the side; he had his arm either resting on the rail, or projecting outside the body of the stage, so that when overturned the other passengers in the same seat were thrown down upon him; his arm was caught under some portion of the vehicle and broken, and he was unable to. be extricated until the other passengers had got out and lifted up the stage. Upon this state of facts it is contended by counsel for appellants that appellee was chargeable with such contributory negligence as ought to bar a recovery. In support of this contention, the case of *P. & C. R. R. Co. v. McClurg*, 56 Pa. St. 294, is cited, where a passenger, by reason of the protrusion of his arm from the window of the car in which he was riding, was injured by the arm coming in contact with another car standing on a switch; and the court held, and, as we think, correctly, that where such passenger " puts his elbow or arm out of the window voluntarily, without any qualifying circumstances impelling him to do it, it is negligence *in se;* and when that is the state of the evidence, it is the duty of the court to declare the act negligence in law."

There is a wide difference, however, between such a case and the one before us. Railway coaches pass along an undeviating track and often within a few inches of a signal post, switch bars, cattle-guards, bridge timbers and cars upon side tracks, rendering it dangerous for passengers to expose any portion of the body beyond the outer line of the coaches, which themselves project beyond the wheels and the track. But stage-coaches do not in this particular differ from other road vehicles, the wheels of which project laterally beyond the body of the vehicle,

which circumstance, in connection with the different character of the roadway and mode of transportation, is an immunity against danger from the mere projection of an arm outside the window or beyond the line of the body of such vehicle. In the case of an injury like that in the railway case cited, the projection of the arm outside the window is the cause of the resultant injury. In the case of the overturning of the stage of appellants by running upon a rock, the position of appellee's arm was no more a cause of the upset which produced the injury than the position of the arms of the other passengers or of the hat upon his head. Besides, the evidence in the record shows that the vehicle in question was not a regular or ordinary stage-coach with windows, but a concord mail wagon or canvas back known as a "Jerky," without windows, but having a canvas cover with canvas side curtains, supported by wooden standards at the sides and bows overhead. The appellee, crowded as he was against the side, with three passengers on the seat, would naturally, and we may say unavoidably, thrust out his arm when the vehicle was overturned, falling as he did, beneath the weight of the other passengers, and with no wall or coach body to protect him. The curtains even were rolled up at the time. Under the circumstances the injury to appellee was an almost inevitable result of the overturning of the vehicle; and the fact that his arm was at the time outside the rail or outer edge of the wagon bed cannot be imputed as negligence or want of due care on his part as passenger.

Another ground of error is that the court permitted evidence that one of the lamps of the stage — the one on the side which collided with the rock — was not lighted at the time of the accident. There was no error in this. It was a circumstance which, in connection with all the others, tended to show negligence on the part of appellants. The driver testified that it was a starlight night and he was able to see the road track, the wheel and the

rock just before he struck it, and that the light would not have assisted him. But this testimony does not render improper the evidence previously admitted in making the case for appellee, showing, at least *prima facie*, a want of due care. In the case of *Crofts v. Walerhouse*, 3 Bing. 321, Best, C. J., says: "The coachman must have competent skill and use that skill with diligence; he must be well acquainted with the road he undertakes to drive; he must be provided with steady horses, a coach and harness of sufficient strength and properly made, and also with lights by night. If there be the least failure in any one of these things, the duty of the coach proprietors is not fulfilled, and they are answerable for any injury or damage that happens." This is certainly strong language, but does not appear to be against the weight of authority in stating the general rules governing in such cases.

Counsel for appellants contend for the rule that the burden of proof is on the plaintiff in such cases not only to show negligence on the part of defendant, but ordinary care on his own part. An examination of the cases will clearly show that a different rule is established by the great weight of authority. Mr. Story lays down the rule as follows: "Where any damage or injury happens to the passenger by the breaking down or overturning of the coach, or by any other accident occurring on the road, the presumption *prima facie* is, that it occurred by the negligence of the coachman, and the *onus probandi* is on the proprietors of the coach to establish that there has been no negligence whatever; and that the damage or injury has been occasioned by inevitable casualty, or by some cause which human care and foresight could not prevent." Story on Bailments, sec. 601 a. Our own court in the case of *Wall et al. v. Livezay*, 6 Colo. 465, declared the rule in the following language, used by Chief Justice Beck: "A *prima facie* case, however, is made out by proof that the relation of carrier and passenger existed

between the parties; that an accident occurred resulting in injury to the passenger, and that it was occasioned by the failure of some portion of the machinery, appliances or means provided for the transportation of the passengers. This proof being made, a presumption of negligence on the part of the carrier arises, and the plaintiff is not bound to go further and show the particular defect or cause of the accident, until the presumption is rebutted. It devolves upon the carrier to rebut this presumption by evidence that he exercised the greatest degree of diligence practicable under the circumstances." In the case of *Stokes v. Saltonstall,* supra, it is held by the supreme court of the United States that in such action the facts that the coach was upset, and the plaintiff injured, are sufficient *prima facie* evidence of negligence or want of skill of the driver, and shift the burden of proof upon the defendant to show that the driver was in every respect qualified, and acted with reasonable skill and the utmost caution; and if the disaster was occasioned by the least want of due skill or of prudence on his part, the defendant was answerable. The same rule substantially is held to be the law in the cases of *Farish & Co. v. Reigle,* and *McLean v. Burbank,* hereinbefore cited. Upon the question of negligence on the part of appellants, the evidence shows that at a station where the stage stopped before the accident, the driver discovered that there were no lanterns on the stage; that he called for two lamps; that the superintendent brought two, and put on, but that one was out of repair, and so was not lighted; that at the place of the accident, the road was level and slightly up-grade; that the rock was a foot and a half or two feet outside the track of the roadway; that there was a gully on the opposite side, the distance being about twelve or thirteen feet between the rock on one side, and the gully on the other, and the width of the vehicle between the outside of the hubs about seven feet; that the driver knew the place well,

because the gully had been made by a washout, and that he slackened his speed at that point.

Under these facts, the question was properly submitted to the jury by instructions, whether the accident might not have been avoided by the exercise of due care on the part of the agents of appellants; or, in other words, whether the injury to appellee was not caused by the negligence of appellants in not using the means clearly within their power and control to have prevented the upset.

Some testimony was admitted, over the objection of appellants, touching the manner and character of the driving of the stage before and after the accident in question. We do not think this was unwarranted. It related to the driver's knowledge of the road and his skill in his employment, and for this purpose was not impertinent, although incompetent to prove his conduct in this particular instance in producing the accident. The want of skill of the driver may be shown, at the time of the accident or at any prior time; but his good or bad conduct can only be looked at, at the time the accident occurred, or as connected with the accident. *Peck and wife v. Neil*, 3 McLean, 24. And evidence that some distance further on the road, the same night, the driver got outside the road and into a gully made by a recent washout, and that the passengers had to get out and assist in extricating the stage and team, and getting them back on the road, was admissible for the purpose of showing the degree of darkness of the night, the character and condition of the road, and the consequent necessity for proper lights on the vehicle. We have examined, with care, the instructions given by the court, and those refused, upon which errors are assigned, and, guided by the rules and principles of law herein laid down as applicable to the facts of the case, we cannot find that the errors contended for are well assigned.

As to the ground for new trial, that the verdict was

excessive, we need only say, in the language of nearly all the decisions upon this point, that there is no rule of law fixing the exact measure of damages in such a case; it cannot be reached by any process of certain computation. The judgment of the jury as to what is a proper and just compensation in such cases must govern, unless the damages awarded are so obviously disproportionate to the injury shown to be sustained, as to warrant the belief that the jury must have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case.

Upon the testimony of the appellee and the other witnesses, including the physicians who were examined respecting the disabled condition of appellee's arm at the time of the trial, which was eight or nine months after the accident, we do not think that the verdict of $2,500 was so disproportionate to the loss, expense and injury shown, as to warrant its being considered excessive compensation.

Of the thirty-eight assignments of error in this case, we have reviewed herein only those which are chiefly discussed by counsel in their briefs, and which appear to be relied upon by appellants for reversal, and perceiving no material error in the record, the judgment will be affirmed.

*Affirmed.*