LUMSDEN v. L. A. THOMPSON SCENIC RY. CO.

(Supreme Court, Appellate Division, First Department. January 22, 1909.)

1. THEATERS AND SHOWS (§ 6*)—SCENIC RAILWAYS—DUTY TO WARN PAS-
    SENGERS.
        Defendant was not negligent in failing to notify passengers on its
    scenic railway to hold on to the car, and not fall off.
        [Ed. Note.—For other cases, see Theaters and Shows, Dec. Dig. § 6.*]

2. THEATERS AND SHOWS (§ 6*)—SCENIC RAILWAYS—INJURY TO PASSENGER—
    ASSUMPTION OF RISK.
        A passenger on a scenic railway who was warned of the danger of
    riding thereon assumed the risk of the ride caused by the usual motion
    of the car, which necessarily jerked when descending inclines, it not
    appearing that the car jerked in an unusual way or to a greater extent
    than must have been anticipated by passengers.
        [Ed. Note.—For other cases, see Theaters and Shows, Dec. Dig. § 6.*]

Appeal from Trial Term, New York County.

Action by Phoebe Lumsden against the L. A. Thompson Scenic
Railway Company. From a judgment for plaintiff, and from an order
denying defendant's motion for a new trial, it appeals. Reversed, and
new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGH-
LIN, CLARKE, and SCOTT, JJ.

Theodosius F. Stevens, for appellant.
Nathan Burkan, for respondent.

INGRAHAM, J. The complaint alleges that the defendant was
the owner of a certain structure and grounds designed for public en-
tertainment, in the borough of Brooklyn, and of a certain railway,
known as the "Scenic Railway," maintained in said grounds, and of
the tracks and coaches or cars used in the operation of the said rail-
way, upon which it invited the public to enter and ride on the pay-
ment of an admission fee; that the said railway was constructed and
operated so as to cause the coaches at one part of the tracks of said
railway to be precipitated suddenly down a steep incline and to violent-
ly lurch forward, which said mode of operation of the said railway
was very dangerous, involving the risk of passengers being thrown
forward out of said coaches; and that it was necessary, in order to
enable the passengers to guard against such danger, that the said
coaches or cars should be provided with appliances whereby the pas-
sengers might take hold and protect themselves from falling out,
and that the passengers be warned of said danger and be warned of
the necessity of holding fast during such dangerous movement of the
said coaches or cars; that on the 24th day of June, 1905, the defend-
ant negligently and recklessly omitted to provide the said coaches or
cars with any appliance of any kind whereby the passengers riding
thereon might take hold at the said place of danger, and operated the
said railway in the said dangerous manner without such appliances;
that the plaintiff, by the invitation of the defendant, its agents and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

servants in charge of said railway, became a passenger in one of said coaches or cars without any warning from the defendant of the danger, or that the coach or cars were not provided with appliances for holding on; that the plaintiff proceeded to ride in said coach or car on said railway; and that the said car was suddenly precipitated down said steep incline, and suddenly lurched forward with great force, and the plaintiff was thrown forward violently and was thrown out of said coach or car, and sustained injuries. The plaintiff testified that on the 24th day of June, 1905, she went to Coney Island, and while there was invited to take a ride on this scenic railroad with her companion; that the fare was 10 cents; that she got on a small open car with three or four seats; that, as she was going around on this railway on the second dip, the car gave a lurch forward, and she was thrown out. Upon cross-examination she testified that she knew what a scenic railway was; that she knew the cars went up and down these inclines, and that was the attractive feature of the entertainment; that her companion wanted to take the ride, and she went with him; that the other members of the party would not go, as they said it was unsafe; that she went on the car with the knowledge that it was rather unsafe, and made objection to the car because there was nothing to hold on to; that she got on the car for the purpose of going up and down these inclines and declines, and selected her own seat. She admitted that the arm of the seat on the car was so constructed that she could hold on to it if she wanted to. Upon this evidence the plaintiff rested, and an officer of the defendant testified that the defendant operated 13 of these scenic railways, carried 5,000,000 of people each year, and over 20,000,000 of people had been carried in them within the last four years; that no one had ever been thrown out of these cars, so far as he knew, except the plaintiff; that these cars are carried to the top of the incline by electric power, and then fall by their own momentum. There was also evidence that the plaintiff jumped off the car, and that the car made no sudden or unusual jolt. There is no evidence that the cars were out of order, that anything broke, or that anything unusual happened. The question as to whether there was a jolt which threw the plaintiff off the car was submitted to the jury, who found a verdict for the plaintiff.

Here was an appliance which was devised for the entertainment of persons visiting this place of amusement. The attraction was the rapid motion of the car in going down these steep inclines. The plaintiff knew the general nature of the ride that she was about to take. She selected her own seat, and voluntarily placed herself in a position in the car from which she was thrown, and she assumed the risk of being thrown from the car by reason of its usual operation. The car necessarily gave a lurch as it started down the incline. So far as appears, there was nothing unusual or extraordinary about the motion of the car; nor was there the slightest evidence that the car was out of order, or that anything happened upon this trip that was not the usual occurrence made necessary by the motion of the car. There was certainly no negligence in the defendant failing to notify passengers who placed themselves on the car to experience the sensation

caused by the rapid change of motion that they were to hold on to the car, and not fall off. It was the case of a person putting himself in a position of obvious danger, where her companions had warned her that it was dangerous, for the purpose of receiving the sensation caused by the sudden and violent motion of the car, and it seems to me clear that the plaintiff assumed a risk of the ride caused by the usual and expected motion of the car.

The case of Barrett v. Lake Ontario Beach Imp. Co., 174 N. Y. 310, 66 N. E. 968, 61 L. R. A. 829, relied upon by the plaintiff, is not at all in point. There the deceased, while using what was called a "toboggan slide" at a place of public amusement, and when placing his sled in the trough slipped upon the platform, fell and received injuries which caused his death. The deceased had mounted upon the steps and placed his sled in the trough of the slide, when his feet shot out from under him. The court said that the contention in that case was that the toboggan structure was unsafe for the specific use for which the defendant intended and leased it, and the question was whether the platform was built in so reasonably safe a manner as to prevent the occurrence of accidents, which men of ordinary prudence and knowing the nature of the public use to which it was to be put might have foreseen as possible; that the defect in the case was in the manner in which the railing around the platform was constructed, which rendered it possible for a person to fall through it to the ground, and it was held that the question whether the railing was so constructed as to be a reasonably sufficient protection to the persons using it was a question of fact for the jury; that the situation being such that a fall from the platform was a possible occurrence to the majority, if not to all, of the persons who used the toboggan slide, a question of fact was presented upon the evidence whether the platform structure had been constructed with that due care which, in the judgment of prudent men, in view of the purpose, should have been exercised by the defendant. There was no question in this case of improper construction, improper or unusual speed, or defect in the machinery or structure. The sole negligence alleged in the complaint was that there was no place provided for the plaintiff to hold on to, and no notice given of the danger of the ride; but, upon the trial, it was conceded that there was a side bar provided which the plaintiff did have hold of. I cannot see that there was any negligence proved in either of these particulars. The attractiveness of these appliances depends solely upon the sensation that the rapid change of speed gives the person using it. There is necessarily a lurch or jerk as the car descends the incline, and there is nothing in the case to show that the lurch or jerk that happened when the plaintiff fell was unusual or that it was anything more than must have been anticipated by any one using the appliance. It seems to me that the accident was the result of one of the dangers that the plaintiff had been warned against, and the existence of which was the attraction which induced her to take the ride, and was a risk that she assumed in undertaking it.

The judgment must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.