JONATHAN GODFREY *vs.* THE CONNECTICUT COMPANY ET ALS.

Third Judicial District, New Haven, June Term, 1922.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, JS.

The plaintiff sought to recover damages for an alleged personal injury sustained while sliding down a roller chute in an amusement resort, and was awarded $1,000 upon the ground that the device when operated was "inherently dangerous." No claim of negligent operation was made nor was any evidence thereof introduced.

*Held* that the conclusion that the roller chute was "inherently dangerous" in operation, was not warranted either by the evidence or as an inference or deduction from the subordinate facts found, and consequently the judgment based thereon was erroneous and must be set aside, and the cause remanded for the rendition of a judgment for the defendants.

The mere possibility of injury through some cause or condition not likely to occur, does not justify the classification of an instrument as dangerous in itself or in its operation.

It is the duty of those who have the charge and supervision of amusement resorts and the structures therein, to exercise reasonable care to make and keep them in a reasonably safe condition for the use of their patrons.

The cases of *Turgeon* v. *Connecticut Co.*, 84 Conn. 538, and *Bernier* v. *Woodstock Agricultural Soc.*, 88 Conn. 558, distinguished.

Argued June 6th—decided October 6th, 1922.

ACTION to recover damages for personal injuries alleged to have been caused by the negligence of the defendants, brought to and tried by the Court of Common Pleas in Fairfield County, *Walsh, J.;* facts found and judgment rendered for the plaintiff for $1,000, and appeal by the defendants. *Error; judgment to be entered for the defendants.*

*Seth W. Baldwin* and *Samuel Campner,* for the appellants (defendants).

*John T. L. Hubbard* and *Clarence R. Hall,* for the appellee (plaintiff).

BURPEE, J. The complaint alleges that the plaintiff was injured "because of the dangerous construction and negligent operation" of an amusement device located on premises owned by the Connecticut Company and leased to the other defendants. Upon the evidence the trial court has found: "The device, upon which the plaintiff was injured, was, at the time of the accident as operated by the person in charge of the same, inherently

dangerous, . . . and this fact it was the duty of" the defendants "to know." After the trial, it is not found nor claimed that the contrivance was negligently operated. Therefore the only cause of action set forth in the complaint which may be the basis of a judgment, is sufficiently stated in their brief by the counsel for the plaintiff in these words: "The gravamen of this case is the dangerous character of the device itself, and not in its operation." The single question, then, which is presented by this appeal, is whether the trial court could, in accordance with the principles of law, reach the conclusion stated in its finding and on which its judgment was rendered.

Upon examination of the record it appears that there is no conflicting evidence relating to the construction or character of the apparatus referred to in the complaint. It is located in a small building and approached through a dark passageway in which are placed various contrivances intended to surprise and amuse visitors. At the inner end of the passageway are twelve stairs leading up to a small room, on one side of which is a seat five feet long and about two feet above the floor. Closely in front of this seat is the upper end of a chute, which consists of a series of twenty rollers, each twelve inches in diameter and covered with carpet and padded with felt, and which slopes downward to the ground floor at the exit from the building. This chute is five feet wide and twenty-four feet long, and the top roller is seven feet above the ground floor. The distance between the rollers is only enough to allow them to revolve. By means of a lever the seat can be tipped forward toward the top roller so as to make a continuous straight line with the surface of the chute. There is a light in the small room, showing on the walls in one place the words "Thru the Falls" and an arrow pointing to the seat, and in another place the word "Exit" and

an arrow pointing to a door. These words are painted in large red letters. Through the door and exit indicated, a person who does not wish to descend by the chute may go down a flight of stairs to the ground floor and out of the building; or he may go back through the passageway by which he entered.

In the operation of the contrivance when the seat is tipped forward by pulling the lever, its occupants slide off from the seat and on to the top roller in the chute, and thence downward over the other rollers successively, with a bump between each two, until they roll over the lowest and arrive with a final bump upon the ground floor near the exit from the building. The rollers are made to revolve only by the impulse and weight of persons sliding over them.

More than sixty constructions of this kind are in use in amusement resorts in the United States. In the year 1920, more than 11,000 persons patronized the one complained of, and more than 15,000 a similar one in Hartford. No complaint was made by anyone except the plaintiff.

The building and the amusement device in question stood in a large park owned by the defendant the Connecticut Company and known as Savin Rock, and in a portion of this park named "The White City," which had been leased to the defendant the S. A. DeWaltoff Company. This company, with the consent of the Connecticut Company, had sublet to the defendant the Otisco Amusement Company the privilege or concession of erecting and operating in the "White City" this amusement structure, which was called "Thru the Falls"; and the latter company owned the building and the apparatus and was operating and controlling them independently, at the time of the alleged accident to the plaintiff. It invited visitors to enter the building on the payment of an admission fee, and therein to

enjoy whatever pleasure they might find on their way through the dark passage to the room in which they would discover the device "Thru the Falls"; and when they arrived there, they were given the opportunity either to go back by the way they had come in, or to go down the stairs to the exit from the building, or, if they wished to continue their pursuit of amusement, to descend to that exit by means of the device so suggestively named. In such circumstances it was unquestionably the duty of those who had the care and supervision of these premises and the structure therein, to exercise reasonable care to make and keep them in a reasonably safe condition and to protect their visitors, and if they should fail to exercise such care, they would become liable for injuries caused thereby. *Turgeon* v. *Connecticut Co.*, 84 Conn. 538, 80 Atl. 714; *Bernier* v. *Woodstock Agricultural Soc.*, 88 Conn. 558, 564, 92 Atl. 160.

But in this action the plaintiff makes no claim that the premises or the structure described were unsafe in any particular except the dangerous character of the apparatus upon which he asserts he was injured. He has not specified, nor has the trial court indicated, from what cause this device is "inherently dangerous," or by what way the subordinate facts stated in the finding or disclosed by the record reasonably lead to the conclusion that it is "inherently dangerous." Upon examination of the whole record, we do not find any evidence that the contrivance, by reason of its construction, is not reasonably safe. Manifestly, when at rest it cannot injure anyone. It is not dangerous in itself, and so could not properly be said to be "inherently dangerous." Hence, if the gravamen of this case is really "the dangerous character of the device itself, and not in its operation," as the plaintiff's counsel declare, this action must fail.

But in its finding the court has qualified the term "inherently dangerous" by which it characterizes the device, by the words "as operated." It is fair to assume that the court thus intended to express its conclusion that the device was dangerous when in motion and use. If that be the meaning which should be given to this language, we do not discover any evidence that when the contrivance is in operation in the customary manner and for the purpose for which it was designed, there is any reason to anticipate that it will harm anyone. The mere possibility of injury, through some cause or condition not reasonably likely to occur, does not justify the classification of an instrument as dangerous in itself or in its operation. A locomotive engine is not dangerous either when at rest or when in motion, unless it be made so by reason of negligence or because of some occurrence not reasonably to be expected. The railroad company may be liable for an injury caused by negligence, but not for one due to the latter cause. In the operation of this contrivance, it is admitted that there was no negligence; and it does not appear nor is it suggested that there was any reason to anticipate that in its proper use it would be likely to harm any person. It is said in the finding that at the bottom of the rollers the plaintiff received a severe blow which caused his injury; but it is not stated that this blow was inflicted by reason of any fault in the construction or method of operation of the contrivance, nor in fact is any reason or cause indicated. None is to be found in the evidence which is a part of the record. The Otisco Amusement Company was not an insurer of its patrons. The only duty which rested upon any of the defendants was to use reasonable care to make and keep these premises and the amusement apparatus thereon reasonably safe for the visitors who were invited to enter and use them. The definitions and reasoning in the cases cited in 17 Corpus

Juris, pp. 1126–1128, are applicable to this case. It differs radically from the case of *Turgeon* v. *Connecticut Co.*, 84 Conn. 538, 80 Atl. 714, and the case of *Bernier* v. *Woodstock Agricultural Soc.*, 88 Conn. 558, 92 Atl. 160; in each of which liability was fixed upon the defendant which was found to have the supervision and care of the premises, because it had not exercised reasonable care in the matters specified. In this case, in which the factor of negligence cannot be used, facts must appear which prove that the operation of the appliance in the usual way and for the intended purpose was in itself so dangerous that injury should reasonably be expected to occur. These facts do not appear. The single instance of the accident to the plaintiff, even if it be admitted that it happened as he claims it did, does not reveal the existence of any danger in the use of the contrivance which should have been reasonably anticipated. It would not justify the conclusion that reasonable care had not been previously exercised, when balanced against the unquestioned evidence that more than 25,000 persons have used this appliance and another like it without a single complaint of injury. Moreover, in view of such experience in the operation of this device, it could not be found reasonably that there was any fault or danger in the apparatus itself, or in its customary and careful use, which the defendants knew or, in the exercise of the care imposed upon them, should have known. From examination of the whole record, it is evident that in this case there is no evidence to show "the dangerous construction" of this device, or its "negligent operation," or that it was out of order or repair, or that the premises on which it is located are not reasonably safe for visitors, or to reveal any fact which tends to prove that this contrivance, while in operation, should reasonably be expected to inflict injury upon any person. Therefore the defendant the

Otisco Amusement Company, which had the immediate care and supervision of the premises and apparatus, did not fail in any respect to exercise the care which the law required in the circumstances. *Fenner* v. *Atlantic Amusement Co.*, 84 N. J. L. 691, 87 Atl. 344; *Barmore* v. *Vicksburg, S. & P. R. Co.*, 85 Miss. 426, 451, 38 So. 210. As to the other defendants, one of which is the owner and lessor and the other the sublessor of the land and privileges, it does not appear that either of them, in any lease or in any other way, retained general supervision or care or authority over the premises and the apparatus and its use. But whatever the responsibility of either of them might otherwise have been, both are relieved from liability in this action for the reasons we have herein stated; the device was not inherently dangerous, nor dangerous in its operation in any respect which either of these defendants knew or would have discovered or anticipated by the use of reasonable care. *Thornton* v. *Maine State Agricultural Soc.*, 97 Me. 108, 113, 53 Atl. 979; *Thompson* v. *Lowell, L. & H. Street Ry. Co.*, 170 Mass. 577, 49 N. E. 913; *Sebeck* v. *Plattdeutsche Volkfest Verein*, 64 N. J. L. 624, 46 Atl. 631.

We are constrained to decide that the trial court, with no conflicting evidence before it, could not logically, reasonably and in accordance with the principles of law, make the inferences and conclusions on which its judgment rests. *Eastern Burlap Bag Co.* v. *Shay Fertilizer Co.*, 96 Conn. 139, 113 Atl. 151. Without these inferences and conclusions, there is no foundation for a judgment against any of the defendants, and it is unnecessary to consider any other reason of appeal.

There is error, the judgment is set aside, and the cause remanded for judgment for the defendants.

In this opinion the other judges concurred.