[Civ. No. 17399.   Second Dist., Div. One.   Sept. 12, 1950.]

ELIZABETH DAVIDSON, a Minor, etc., Appellant, v. LONG BEACH PLEASURE PIER COMPANY (a Corporation) et al., Respondents.

Pollock & Pollock, Edward I. Pollock and David Pollock for Appellant.

Calvin L. Helgoe and John K. Ford for Respondents.

DRAPEAU, J.—Three teen-age girls, plaintiff, her sister, and their friend from Utah, were enjoying one of the Christmas holidays on the strand at Long Beach. They rode on a roller coaster. They went into the House of the Laughing Lady. And then two of them, the plaintiff and the girl from Utah, got tangled up with an amusement device called a tilt-a-whirl.

The tilt-a-whirl was located on an ocean pier belonging to defendant Long Beach Pleasure Pier Company; it was owned by defendant E. C. Velare; and, at the time the girls rode on it, it was operated by the defendant Carmen Tomei. Long Beach Pleasure Pier Company permitted the operation of the tilt-a-whirl on a verbal lease with Mr. Velare, for a rental of 25 per cent of the receipts.

A tilt-a-whirl is a merry-go-round with a college education. It is a circular platform, which revolves like a merry-go-round. But instead of going round and round on a horizontal plane, it goes up and down at the same time it goes round and round. Some of the witnesses said that it undulates. The faster the table revolves the more rapidly it undulates.

Seven two-wheeled, two-passenger cars are affixed with swivels at the front end thereof to this revolving, undulating table. As the table goes round and round and up and down, the cars gyrate on the swivels, right or left, or left or right, haphazardly, like spinning, bobbing corks on a turbulent whirling pool.

The backs of the cars are high enough to shield and to hold the whole body of a rider. Under normal operations the backs of the cars absorb strange gravity pulls and keep passengers from flying off at a tangent.

When a rider seats himself in the car, a U-shaped safety bar is let down to a horizontal position over his lap. The safety bar is attached to the front of the car at the bottom

by two cast iron discs rubbing against each other which act as a clutch. While the bar is down, the cars runs freely. If the bar is raised, it sets brakes on the wheels and stops the car.

When the girls got into the car they were to ride on this occasion, the bar was lowered over their laps, and they were told to hang onto it. Mr. Tomei started a gasoline engine which provided the power. The engine was adjacent to a narrow walkway surrounding the platform. The table commenced to revolve and undulate and the cars to gyrate.

Then Mr. Tomei ''gunned the engine,'' increasing the revolutions of the table, the gyrations of the cars, and the up-and-down motion of the whole contraption. This is said to give an extra thrill to riders, especially if it is done just as a car is at the crest of a hill as the table revolves.

Unfortunately, the bar in front of plaintiff flew up. She was thrown out of the car and against a steel post.

She was seriously and painfully injured. She had a comminuted fracture of the right femur. This was set and in traction for six weeks. Then her leg was placed in a plaster cast for another six weeks. After 12 weeks in the hospital, she was allowed to go home, and spent two weeks more in bed.

Her final recovery has been good, but there will always be a bulge on her leg and a stiffness of her leg. And she cannot run, or dance, or play tennis, as she used to.

Action for damages against the three defendants named, and others who have gone out of the case, was commenced by guardian *ad litem*, resulting in a jury's verdict for plaintiff of $10,185. Judgment notwithstanding the verdict was granted in favor of the defendants. From this judgment plaintiff appeals.

An expert witness for defendants testified that in his opinion the accident could only have happened by the girl standing up in the car. He admitted, however, that a sudden jerk, or jolt, would have thrown her out of the car.

The operator did not see the girl actually thrown out. He said he cautioned her twice to keep her hands on the bar, as the car passed him. And that he stopped the table on its third revolution, but before it stopped and while the girl was on the opposite side of the table she fell out.

Plaintiff, her sister who did not ride, her girl friend who was with her, and a sailor standing by, all testified that the safety bar flew up and the girl was thrown out. The sailor

also testified that the operator of the tilt-a-whirl "gunned it" just before the accident.

Plaintiff said: ". . . the car gave a sudden jerk, and the handle went forward and I was thrown out." The girl with plaintiff said that while the car was going extremely fast the bar flew open and plaintiff was thrown out over the top of the bar. This witness saved herself by grabbing hold of the side of the car.

It is difficult to see upon what theory the judgment notwithstanding the verdict was granted. The evidence as stated is substantial, and an inference of negligence follows. Upon that inference the verdict of the jury is based. As stated in *Estate of Flood*, 217 Cal. 763, 768 [21 P.2d 579], a judgment notwithstanding the verdict " '. . . may be granted "only when, *disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence,* the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given." ' "

In determining the motion for judgment notwithstanding the verdict, we cannot weigh, nor was the trial court authorized to weigh, the evidence or judge of the credibility of witnesses. (*Estate of Arnold*, 16 Cal.2d 573, 576-577, 582 [107 P.2d 25]; *Shannon* v. *Thomas*, 57 Cal.App.2d 187, 192-193 [134 P.2d 522].)

The proprietor of a public place of amusement is required to maintain in a reasonably safe condition, every contrivance used in its premises, and to properly inspect and supervise the same. (*Chardon* v. *Alameda Park Co.*, 1 Cal.App.2d 18 [36- P.2d 136]; *Whyte* v. *Idora Park Co.*, 29 Cal.App. 342 [155 P. 1018]; *Engstrom* v. *Huntley*, 345 Pa. 10 [26 A.2d 461] (involving a tilt-a-whirl).) The jury found that the car used by plaintiff was not in a reasonably safe condition and was not properly inspected or supervised. Upon this finding the defendant pier company is liable. (Restatement, Torts, § 344.)

In addition to the duties of maintenance, inspection, and supervision, with which the operator was likewise charged, it was his further duty to use reasonable care to see that the girls were not injured while the tilt-a-whirl was running. (*Potts* v. *Crafts*, 5 Cal.App.2d 83 [42 P.2d 87].)

And it is elementary law that Mr. Velare, who employed Mr. Tomei, and who owned the instrumentality, was liable for the latter's want of reasonable care in every respect.

The trial court refused to instruct the jury upon the doctrine of res ipsa loquitur. This was error. When a thing which causes injury is shown to be under the management of the defendant and the accident is such as in the ordinary course of things does not happen if those who had the management used proper care, res ipsa loquitur applies. (*Ales* v. *Ryan*, 8 Cal.2d 82 [64 P.2d 409]; *Ybarra* v. *Spangard*, 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258]; *Metz* v. *Southern Pac. Co.*, 51 Cal.App.2d 260 [124 P.2d 670].)

The judgment is reversed, and the superior court is directed to make and enter judgment for plaintiff for $10,185, in accordance with the verdict of the jury, together with costs in the trial court and in this court.

White, P. J., and Doran, J., concurred.