## No. 18,490.

### Flora M. Hook *v*. The Lakeside Park Company.

(351 P. [2d] 261)

Decided April 4, 1960.   Rehearing denied May 2, 1960.

278

Messrs. EARLY & KELLER, for plaintiff in error.

Messrs. WOOD, RIS & HAMES, for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

THE plaintiff, Flora Hook, then Flora Wosk, filed a complaint against the Lakeside Park Company on November 23, 1955, alleging that the defendant's negligent maintenance and operation of the Loop-O-Plane resulted in injuries to her and praying damages therefor in the amount of $20,000. Trial was commenced to a jury, but at the close of plaintiff's case the court, on defendant's motion, ordered the complaint to be dismissed and entered judgment in favor of the defendant. Plaintiff seeks reversal of the judgment. The parties will be referred to by name or by their designation in the trial court.

The plaintiff was injured while riding the Loop-O-Plane at the Lakeside Amusement Park in Denver on August 12, 1955. Viewing the evidence most favorably to the plaintiff, the circumstances of the accident are as follows: Plaintiff in company with a number of other young men and women went to the park after a meeting of their ski club. Plaintiff rode on some other devices, and then, together with Mr. Marvin Rossman, boarded the Loop-O-Plane, paying 15 cents for a ticket which contained an assumption of the risk provision to be discussed hereafter. The Loop-O-Plane is a device consisting of a cylindrical shaped car in which two passengers sit back-to-back. The car is attached to a long arm which rotates in a circle on a vertical plane in alternately clockwise and counter-clockwise directions. Plaintiff testified that on boarding the car she noticed a leather strap across her body below her waist but that she did not feel any pressure from this strap when the machine

was not in motion, and that she could not see from inside the car how it was fastened. This strap crosses over a passenger's body in much the same manner as a safety belt in an automobile or an airplane. A metal cross bar extended across the car in front of the passenger. Plaintiff took hold of this bar as the device started but was unable to retain her hold as the car swung through a full circle. Plaintiff testified that the attendant "told me that I would hit my head, but he didn't tell me where I would hit it—that it's possible that I might hit my head." and that "I bumped my head on the floor. He didn't tell me I would go all the way over and bump my head on the floor." and that the attendant made no other statement to her other than that she might bump her head. The car first swung back and forth a few times and then swung through a complete circle. On this first circle the plaintiff lost her hold on the bar and was thrown violently forward so that her head touched the floor of the car (not the wire mesh over the top of the car) and then back into her seat. Plaintiff testified that as the car went through the full circle she felt the belt across her but that it "didn't hold me in position." She heard a sharp crack and felt a severe pain in her back at this time and began to scream for the ride to be stopped. In this regard, the doctor who treated her testified that plaintiff told him that the injury occurred when she was thrown forward although the plaintiff's testimony was to the effect that she thought it happened when she was thrown back. Examination revealed plaintiff to have suffered a compression fracture of the first lumbar vertebra in the center of her back. It also appeared that the plaintiff had had prior difficulties with the lower and upper parts of her spine, but the doctor who treated this fracture and who appeared as an expert witness in her behalf, testified that the prior injuries would have no effect on the susceptibility of this part of her back to this type injury; that this was the area of the back where such an injury

would be typically produced by a stress such as plaintiff experienced.

Plaintiff contends that an adequate case was made before the trial court either on the theory of simple or common law negligence or of *res ipsa loquitur* to justify submission of the cause to the jury. Defendant, on the other hand, makes the following points: (1) applicability of the doctrine of *res ipsa loquitur* has been raised for the first time in this Court and should therefore not be considered, (2) plaintiff's evidence having established the cause of her injuries, the doctrine of *res ipsa loquitur* was not applicable, (3) plaintiff failed to establish a factual situation to which *res ipsa loquitur* could be aplied, (4) plaintiff failed to establish a prima facie case of negligence, (5) plaintiff assumed the risk of the injury received.

There is no serious dispute in the evidence itself. The dispute arises with respect to the proper inferences to be drawn therefrom. Plaintiff's version is that the leather safety strap was not fastened tightly enough, and that the failure on the part of the defendant's servant to tighten it was a violation of duty which constituted negligence, and was the proximate cause of the injury. She maintains that if it had been fastened tightly she would not have been injured. Plaintiff's counsel presented his theory of the case in his opening statement as follows:

"There is a thick leather safety strap two or three inches wide which was attached to the outside of the car, was fastened by the attendant from the outside, not by the passenger. The passenger doesn't do anything. Just sits in there.

"The testimony will be that she doesn't remember this strap particularly. She had no reason to notice whether it was fastened or not. She didn't feel the strap during the beginning of the ride, that is, across her body at all.

"Now the evidence will show that the strap is designed

to hold against the seat, so when it goes around you don't get thrown out.

"The evidence will show that when the thing gathered momentum she was sitting in the seat, she was thrown clear forward so that her head touched the ground. That is, not the ground, but between her feet there, in the bottom of the car, and it was at that time that she felt the strap when she was clear down with her head touching the floor.

"The evidence will show that the strap was designed to be tight enough so that it wouldn't permit you to go that far forward.

\* \* \*

"The evidence will further show that had the strap been fastened the way it should have been fastened to keep her tight against the seat, that there would have been no way for her to have been injured on the device. That the device of and by itself is not dangerous; that it has been used for a number of years at Lakeside Park, and that it is a fact that the strap was in such a position that she could be thrown forward and flipped back in the manner that I have described. That is the reason this injury occurred. Thank you."

Defendant argues that the evidence is insufficient to establish a prima facie case of negligence. It is pointed out that the record is devoid of evidence to establish that the strap was designed to protect against the hazard of moving forward; that there is a dearth of evidence to establish the function of the strap; that since it is located across the hips and down, it is logical to suppose that it was intended to hold the occupant against the force of gravity when the car moves into an upside down position and that the bar in front of the person is the protective device against the kind of forward motion which produced the compression fracture. (Plaintiff testified that she tried but was unable to hold this bar.)

I.

The legal standard applicable to liability for

injuries incurred on an amusement device is that of reasonable precautions to avoid injury, or as it is sometimes called, that of ordinary care. The circumstances which attend an activity such as the present one being extremely and intrinsically hazardous, demand a degree of care commensurate with the risk. Consequently a slight deviation from the standard (where, as here, the circumstances require great care) resulting in personal injury will render the actor liable. *Denver Consolidated Electric Co. v. Simpson,* 21 Colo. 371, 41 Pac. 499; *Blankette v. Public Service Company of Colorado,* 90 Colo. 456, 10 P. (2d) 327. See *Prosser on Torts* 147, *Restatement of the Law of Torts,* Sec. 297, 52 Am. Jur. 317, Sec. 129 *Theatres, etc.* It does not follow, however, that an operator of an amusement device, such as the defendant, is an insurer of the passenger's safety. The presumptions or inferences available to a passenger in an action against a carrier are not available in such circumstances. The warranty of safe carriage, present in the carrier case, is absent where a plaintiff undertakes to ride on a device such as a Loop-O-Plane in an amusement park. Here the obligation is to render care commensurate with the risk involved, and the predominant warranty which the operator offers is not that the passenger shall be safe, but that he shall receive a thrill. No such factors are present in injury cases arising out of a carrier-passenger relationship. Cf. *Sanderson v. Frazier,* 8 Colo. 79, 5 Pac. 632; *Denver South Park & Pacific Ry. Co. v. Woodward,* 4 Colo. 1; *Denver & Rio Grande R. R. Co. v. Fotheringham,* 17 Colo. App. 410, 68 Pac. 978.

## II.

Plaintiff's proof is deficient in that it fails to establish that neglect on the part of the defendant acted to produce her injury in fact or in law. The problems of legal and factual cause are intertwined and are not susceptible to separate treatment.

1. The evidence is vague and does not establish with

certainty that the strap was loose. Plaintiff testified that she could not feel it until the car revolved. We are left to speculate as to the extent of its looseness. Thus it is questionable whether defendant has been shown to have been guilty of a wrongful act even in this respect.

2. No evidence is introduced regarding the function of the strap. Since it is around the passenger's hips it would seem logical to infer that its mission is to hold the passenger in the seat. It is not inferrible that it is designed to protect against back movement such as plaintiff experienced; it is a more sensible deduction that the bar which the passenger holds serves to prevent the upper back from jackknifing or whiplashing, and thus protects from a compression fracture such as that plaintiff suffered.

It is not apparent, therefore, to a degree beyond that of mere possibilty that a relationship existed between the loose strap and plaintiffs' body movements. The obvious hazard created by the strap's not being tight was that of the plaintiff moving out of her seat and striking her head. The forward movement which she described was the result of the usual and expected movement of the mechanical amusement device in question. The failure of plaintiff to hold onto the bar which was provided was the proximate cause of her injury rather than the looseness of the strap.

Assuming that the defendant was shown to have been negligent, in that failure to fasten the strap tightly created a risk of injury, liability does not follow unless it is also shown that such negligence was a substantial factor in producing the injuries. *Restatement,* supra, Sec. 431. Where, as here, several events may have brought about the harm to plaintiff, and an event other than the defendant's negligence appears predominant, the alleged negligence cannot be considered a substantial factor. See *Restatement,* supra, Sec. 433, Comment on Clause (a) as follows:

"There are frequently a number of events each of

which is not only a necessary antecedent to the other's harm, but is also recognizable as having an appreciable effect to bringing it about. Of these the actor's conduct is only one. Some other event which is a contributing factor in producing the harm may have such a predominant effect in bringing it about as to make the effect of the actor's negligence insignificant and, therefore, to prevent it from being a substantial factor. So too, although no one of the contributing factors may have such a predominant effect, their combined effect may, as it were, so dilute the effects of the actor's negligence as to prevent it from being a substantial factor."

In the present case at least two factors loom larger as causes than the allegedly loose strap. These are (1) the failure of the plaintiff to hold the bar which was in front of her, and (2) the natural and expected movement of the mechanism. Both appear as more predominant or substantial causes than that relied upon by plaintiff.

An illustrative case in which liability was denied in circumstances more strongly indicative of the presence of a necessary causal relation than in the case before us is that of *Stout v. Denver Park and Amusement Company,* 87 Colo. 294, 287 Pac. 650. There plaintiff, who was injured while riding on defendant's roller coaster, alleged that defendant was negligent in failing to warn him and in failing to strap him in. Plaintiff complained that he was struck in the head soon after the car started to move and was thrown out of the car and dragged along the track. It was held that plaintiff had failed to establish that failure to strap him was the cause of the injury. The Court said:

"It is elementary that in the absence of conflicting testimony the determination of the proximate cause is for the court. Proximate cause is that which, in natural and continued sequence, unbroken by any efficient, intervening cause, produced the result complained of, and without which that result would not have occurred.

Applying this definition to the undisputed facts in evidence, it must be concluded that the proximate cause of the accident was the blow on the head. What caused this blow is not disclosed. It is not shown that the object which struck plaintiff was under the control of the defendant or that it knew or in the exercise of reasonable care should have known of plaintiff's perilous condition after he had been struck, or that, if in the exercise of reasonable care defendant should have known of plaintiff's perilous condition, it had thereafter sufficient time with the exercise of reasonable care to have prevented plaintiff's injuries. In other words, the evidence discloses that plaintiff's injuries were occasioned by an independent, efficient cause which could not reasonably have been anticipated and avoided by the defendant and without which the accident would not have occurred. Under these circumstances, defendant's failure to warn plaintiff to use the strap or to cause him to be strapped into the car cannot constitute the proximate cause, either in itself or combined with the blow on the head. Defendant's negligence, if any, was merely a condition under which the proximate cause operated. In such cases, defendant cannot be held liable. * * * "

So it is not proved nor is it logically inferrible, from the facts in evidence, that the force which produced the injury originated in negligent conduct of the defendant. See *Harper and James, The Law of Torts,* Sec. 19.4:

" * * * where from the facts most favorable to the plaintiff the nonexistence of the fact to be inferred is just as probable as its existence (or more probable than its existence), the conclusion that it exists is a matter of speculation, surmise, and conjecture, and a jury will not be permitted to draw it. '[W]here the probabilities are at best evenly balanced between negligence and its absence, it becomes the duty of the court to direct the jury that there is no sufficient proof.' It has been suggested that this 'may be an over-statement of the quan-

tum of proof required,' but it represents the more usual formulation. * * * "

From the fact that the strap was not tight we are asked to infer that a force was produced which caused plaintiff to lose her grip on the iron bar. We are asked to indulge a further inference that this in turn produced her injuries. There is not, however, a sufficient factual basis to enable deduction to the conclusion which she urges.

The problem here is quite similar to that which was considered in *Johnson v. United States,* 333 U.S. 46, wherein the plaintiff workman testified concerning his injuries, but failed to call as a witness a fellow employee to testify as to whether any act or omission of his had contributed to the injury of the claimant. The dissenting opinion of Mr. Justice Frankfurter points up deficiencies present in both the *Johnson* case and the present one. He stated:

"What evidence does the record disclose? Of the two available witnesses only one testified. That was the petitioner. It is accurate to state, therefore, that his version of what immediately preceded the injury was uncontradicted. But it is no less true that he was unable to furnish any evidence bearing on the cause of the happening. His testimony has not established that it was the carelessness of Dudder that caused the block to fall out of Dudder's hand rather than a careless jerk of the rope by himself which caused such release. Dudder was available as a witness but he was not called. The United States in fact had Dudder's deposition taken before the trial, and it was placed at Johnson's disposal. Neither party, for reasons of its own, called Dudder as a witness or introduced his deposition * * * Since we cannot tell from the record how the injury to the petitioner occurred — it certainly was not established why the block fell — I cannot escape the conclusion that petitioner failed to sustain his burden of proving by a fair preponderance of the evidence that his injuries were at-

tributable to the respondent's negligence. [Citation omitted.]

"But I do not believe that res ipsa loquitur is applicable here. It is, after all, a 'rule of necessity to be invoked only when necessary evidence is absent and not readily available.' See Cooley, Torts, 4th Ed., §480. Here the evidence as to the cause of petitioner's injuries was admittedly available and it would seem to follow that since what actually happened could have been adjudicated, it should have been adjudicated. Therefore, I would affirm the judgment of the court below but modify its mandate so that there may be a new trial on this issue and an adjudication based upon an adequate determination."

Undoubtedly evidence was available which could have shed light on the functions of the instrumentality in the present case on possible negligence of the defendant. For reasons of her own, however, the plaintiff chose to not call the operator of the Loop-O-Plane or any other witness who could enlighten the court concerning its functions. In view of the election of the plaintiff to proceed in this fashion we are constrained to evaluate the case in the light of the evidence presented and the inferences which reasonably flow from such evidence. So tested, it seems clear that the plaintiff's evidence left the important aspects of her case to surmise and speculation.

III.

As indicated by Mr. Justice Frankfurter in the *Johnson* case, the doctrine of *res ipsa loquitur* made no contribution. Similarly here, it does not improve the plaintiff's position. We say this not because the argument is made for the first time in this Court nor because plaintiff has, as defendant urges, irrevocably elected to stand on specific acts of negligence rather than on *res ipsa*. As to this latter, we call attention to the fact that plaintiff's evidence does not purport to reveal the true facts and consequently she cannot be said to have elimi-

nated the *res ipsa* doctrine as an aid in proof. See *Prosser,* supra, Sec. 214, which declares:

" * * * It is quite generally agreed that the introduction of evidence which does not purport to furnish a complete explanation of the occurrence does not deprive the plaintiff of res ipsa loquitur."

See also the following cases: *Scott v. Greeley Joslin Store Co.,* 125 Colo. 367, 243 P. (2d) 394; *Rudolph v. Elder,* 105 Colo. 105, 95 P. (2d) 827; *Brighton v. DeGregorio,* 136 Colo. 1, 314 P. (2d) 276; *Zimmerman v. Franzen,* 121 Colo. 574, 220 P. (2d) 344.

The reason for non-applicability of the doctrine here stems from the insufficiency of the circumstantial evidence to establish the ingredients of the claim. In order for the doctrine to fill the breach — it must appear (1) that the instrumentality is under the exclusive control of the defendant, (2) that the accident is of a kind which ordinarily does not occur in the absence of defendant's negligence, (3) that it must not have been due to any voluntary act or contribution on the part of the plaintiff. See *Prosser,* supra, 201. *Harper & James,* Sec. 19.5.

Applying these standards to the present facts, it is clear that the mechanism was under the control of defendant but requirements (2) and (3) are not satisfied. The accident is not of a kind which bespeaks negligence. As shown above, it is explainable in terms of forces which are non-tortious. The force which produced plaintiff's body movement was the normal and expected force of the mechanism in which she was riding. Furthermore, the possibility that plaintiff's sudden forward movement was attributable to her failure to hold the bar or rod in the car is as persuasive an explanation of her injury as the possibility that it resulted from the looseness of the strap.

In each of the cases cited by the plaintiff in which *res ipsa* was held to be applicable there is present an unusual happening of a kind which usually does not occur in the absence of negligence on the part of the de-

fendant such as a defect in the mechanism. Thus in *Davidson v. Long Beach Pleasure Pier*, 99 Cal. App. (2d) 384, 221 P. (2d) 1005, plaintiff was thrown out of the car when the safety bar flew up. *Cooper v. Winnwood Amusement Co.*, 227 Mo. App. 608, 55 S.W. (2d) 737, was a roller coaster accident case in which it appeared that there was no safety strap and the evidence established that such straps were in common use. *Connors v. Hudson City Gravity Coaster Co.*, 3 N.J. Misc. 989, 130 Atl. 443, also involved injury in a roller coaster. The plaintiff there claimed that a strap became loose or broke whereby she was thrown violently forward and back. This decision merely affirmed a jury verdict and the short opinion fails to indicate whether *res ipsa* was relied on. *Sand Springs Park v. Schrader*, 82 Okla. 244, 198 Pac. 983, was a roller coaster case in which the car in front of that in which plaintiff was riding backed down and collided with the car in which plaintiff was riding.

In the case at bar, the happening is not such as to point to negligence as the predominant or even the equal explanation, and so the vagueness and ambiguousness of plaintiff's evidence operates to defeat her claim, and the doctrine of *res ipsa loquitur* does not serve to supply the deficiencies. See *Weiss v. Axler*, 137 Colo. 544, 328 P. (2d) 88.

IV.

Having concluded that the predominant force shown by the evidence as the cause of the plaintiff's injury was obvious, we must also conclude that this was a hazard which was assumed by the plaintiff when she voluntarily undertook to ride on the plane. Although we do not give legal significance to the express waiver which was printed on the ticket, we do take note of the fact that plaintiff was shown to have been aware beforehand of the general hazardous nature of the Loop-O-Plane. According to her testimony, the attendant told her when she boarded the Loop-O-Plane that she might bump her

head. She further testified that she knew prior to taking the ride on the Loop-O-Plane that it would swing back and forth, change direction rather suddenly and that it would also swing in a complete 360 degree circle. Under these circumstances the language of Mr. Justice Cardozo in *Murphy v. Steeplechase Amusement Co.*, 250 N.Y. 479, 166 N.E. 173, seems particularly applicable:

"One who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball. Pollock, Torts (11th Ed.), p. 171; Lumsden v. L. A. Thompson Scenic Ry. Co., supra; Godfrey v. Connecticut Co., 98 Conn. 63, 118 A. 446; Johnson v. City of New York, 186 N. Y. 139, 148, 78 N.E. 715, 116 Am. St. Rep. 545, 9 Ann. Cas. 824; McFarlane v. City of Niagara Falls, 247 N. Y. 340, 349, 160 N.E. 391, 57 A.L.R. 1; cf. 1 Beven, Negligence, 787; Bohlen, Studies in the Law of Torts, p. 443. The antics of the clown are not the paces of the cloistered cleric. The rough and boisterous joke, the horseplay of the crowd, evokes its own guffaws, but they are not the pleasures of tranquility. The plaintiff was not seeking a retreat for meditation. Visitors were tumbling about the belt to the merriment of onlookers when he made his choice to join them. He took the chance of a like fate, with whatever damage to his body might ensue from such a fall. The timorous may stay at home."

See also *Burns v. Herman,* 48 Colo. 359, 113 Pac. 310.

We conclude that the plaintiff's evidence was insufficient to justify submission of the case to the jury, hence the judgment of dismissal should be affirmed.

MR. JUSTICE MOORE, MR. JUSTICE FRANTZ and MR. JUSTICE HALL dissent.

MR. JUSTICE FRANTZ dissenting:

As I view the evidence in this case, the plaintiff made

out a prima facie case; hence, the trial court committed error in entering an order of dismissal on defendant's motion therefor at the conclusion of plaintiff's evidence. I believe there was evidence from which the jury could infer negligence, and certainly the circumstances presented a case in which the court should have said *res ipsa loquitur*.

Four important facts appear from the record: (1) the Loop-O-Plane was under the management and control of the defendant through its servant; (2) the plaintiff was a passive passenger in the Loop-O-Plane; (3) there was testimony to the effect that the strap which extended over the hips and lay over the lap of the plaintiff was not tightly drawn; (4) the evidence reveals that the iron bar to which the plaintiff manually clung was wrested from her hands.

Drawing every favorable inference from the evidence, as must be done in the event of a motion to dismiss at the conclusion of the plaintiff's case, it is not improbable that the strap permitted some play of the body, and that the movement of the Loop-O-Plane may have caused this play of the body to bring about the wresting of the hand bar from plaintiff's grasp. It is a fair inference that the mechanism in which she was riding was by the defendant swung with such force and speed as to overcome her strength and ability to retain her grasp of the bar. Certainly the jury could properly infer this from the evidence presented.

That the plaintiff lost her hold on the hand bar is undisputed. If the jury could not properly infer that she lost her grip on the hand bar because of the movement of her body, resulting from the play of the body because of a loose strap, then it would seem that this hand bar, under ordinary circumstances and in the usual use of the machine, would not be wrested from a patron's hands. In such event, *res ipsa loquitur*, and it would be incumbent upon the defendant to exonerate itself from liability by showing that the occurrence of the loss of

the grip on the hand bar was due to no fault of the defendant.

It may be true that the defendant is not an insurer, but its patrons have the right to presume that they will not be injured while passengers in the Loop-O-Plane, and that the defendant will do all that human care, vigilance and foresight could reasonably require, consistent with the purpose of the operation of the mechanism, in order to protect those seated in it. *Denver Consolidated Electric Co. v. Lawrence,* 31 Colo. 301, 73 Pac. 39.

"The proprietor is not an insurer of the safety of his patrons, nor is he bound to protect them against such obvious risks as are necessarily incidental to the particular amusement device, but he must use reasonable care and diligence to see that the device is properly constructed, and is maintained in a fit condition for the purposes for which it is used, and is managed by agents of competent skill with that degree of care which an ordinarily prudent person would exercise under like circumstances and in a like situation. [Citing cases.]

"So, where the mechanical contrivance was shown to have been constructed, maintained, and managed by the appellant and his agents, and the patron had paid the fare, and, after an assurance of its safety, but without any knowledge of its operation, had placed herself in the contrivance under the exclusive care and . control of these agents, and while this relation continued, an accident occurred to her that, in the ordinary course of things, was such as does not happen if those who have the construction, maintenance, or management use reasonable care and diligence, the occurrence of the accident was sufficient to carry the case to the jury for the determination of whether the accident arose from want of reasonable care." *Carlin v. Smith,* 148 Md. 524, 130 Atl. 340. See *Coaster Amusement Co. v. Smith,* 141 Fla. 845, 194 So. 336; *O'Callaghan v. Dellwood Park Co.,* 242 Ill. 336, 89 N.E. 1005, 134 Am. S. R. 331, 26 L.R.A.N.S.

1054, 17 Ann. Cas. 407; *Bibeau v. Fred W. Pearce Corporation,* 173 Minn. 331, 217 N.W. 374.

The plaintiff entrusted herself to the care of the defendant. Once in the Loop-O-Plane she was no longer a free agent; she had no control over her movements, except to endeavor to hang onto the bar. The defendant was in complete charge of this instrumentality; it and it alone caused the mechanism to swing back and forth and to revolve; it and it alone caused the Loop-O-Plane to change its course and speed and determined whether the movement should cease or continue.

Plaintiff on entering the amusement device was whole. After the ride she had a broken back. She did not enter the machine to be injured, and yet injured she is. The defendant acted with design and intent in the operation of the machine, and its actions caused plaintiff to release the bar and to be injured. Plaintiff knows nothing as to why she could not retain her grasp of the bar; defendant should know, and under the *res ipsa loquitur* doctrine should be required to prove lack of negligence on its part.

Considering the circumstances, we believe the following language from the case of *Weiss v. Axler,* 137 Colo. 544, 328 P. (2d) 88, is appropriately analagous:

"In this case the administration of the wave treatment was under the control and management of the defendants; the plaintiff was merely the passive recipient of the treatment. Shortly after the treatment she sustained a loss of hair which in the ordinary course of things would not have happened if defendants had used due care. From this evidence arose a presumption of negligence (making for plaintiff a prima facie case), a device which takes the place of evidence. The trial court properly said of the circumstances, *res ipsa loquitur,* and required the defendants to prove exculpation from their presumed negligence."

I would now discuss assumption of risk. Plaintiff at most assumed the risks ordinarily attendant upon riding

in the Loop-O-Plane. Untoward conditions or incidents would not generally call into play the doctrine of assumption of risk; they could not be deemed to be within the contemplation of the parties. Inferences of ordinariness or unusualness of the circumstances to which plaintiff was subjected were for the fact-finder to draw. The case being in such posture, assumption of risk, if a factor, was a problem for resolution by the jury. *Whyte v. Idora Park Co.*, 29 Calif. App. 342, 155 Pac. 1018.

My conviction that the trial court erred requires this dissent.

MR. JUSTICE HALL joins in this dissenting opinion.